67 F.3d 140
 68 Fair Empl.Prac.Cas. (BNA) 1751,
66 Empl. Prac. Dec. P 43,730
Susana PERDOMO, Plaintiff-Appellant,
v.
Carol M. BROWNER, Administrator, United States Environmental
Protection Agency, Defendant-Appellee.
 No. 94-3356.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 31, 1995.
Decided Oct. 6, 1995.
 
 Marshall L. Blankenship (argued), Paul E. Lehner, Schuyler, Roche & Zwirner, Chicago, IL, for Plaintiff-Appellant.
 Linda A. Wawzenski, Asst. U.S. Atty. (argued), Chicago, IL, Thomas P. Walsh, Asst. U.S. Atty., Civil Division, Chicago, IL, for Defendant-Appellee.
 Before CUDAHY and COFFEY, Circuit Judges, and WALTER,* District Judge.
 COFFEY, Circuit Judge.
 
 
 1
 Susana Perdomo, an attorney employed by the Environmental Protection Agency (EPA), brought suit against the agency under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., claiming that the EPA had failed to promote her from a GS-13 level to a GS-14 level because she is Hispanic. The district court granted summary judgment for the EPA and Perdomo appeals. We reverse and remand.I. Background
 
 
 2
 In August 1986, Susana Perdomo, a Hispanic female, was hired by the EPA in the Office of Regional Counsel, section 5, in Chicago following her graduation from Boston College Law School earlier that year. She was classified as a GS-11 law clerk. When she passed the bar exam in 1987, Perdomo was appointed as an assistant regional counsel, although her classification level remained the same and she received no increase in benefits.
 
 
 3
 Perdomo was employed by the Air, Water, Toxics, and General Law Branch within the regional EPA office. This branch is headed by a branch chief and contains three sections, each one staffed with a section chief. When Perdomo began working, her section chief was Eric Cohen. Cohen was later promoted to branch chief and it was his responsibility in that position to recommend Perdomo's promotion to the GS-14 level.
 
 
 4
 In 1988, Cohen as section chief recommended Perdomo's promotion from a GS-11 level attorney to a GS-12 level attorney and then, in 1989, to a GS-13 level attorney position. Although it is not clear from the record, at some point in 1989, Cohen became the acting branch chief and Steven Mendoza, a Hispanic male, took over his position of section chief. Between 1987 and 1992, Perdomo also was awarded several accolades for the quality of her work, including four bronze stars, the EPA's highest award, and several letters of commendation. In 1992, she scored 465 out of 500 on her annual performance evaluation, which placed her in the "outstanding" category of employees.
 
 
 5
 In 1989, the EPA hired Susan Tennenbaum, a Caucasian female, who had graduated from the University of Pennsylvania Law School in 1985 and had been in private practice in New York and Chicago for a period of four years. Tennenbaum, in 1992, scored a 450 on her annual evaluation, ranking in the "outstanding" category. In 1991, the EPA hired Janice Loughlin, also a Caucasian female, who was a recent graduate of Loyola Law School of Chicago, Illinois, in 1981, and had clerked in the Illinois Appellate Court as well as having been in private practice before joining the EPA. Loughlin, in 1992, scored a 455 on her annual evaluation, also an "outstanding" score. Neither Tennenbaum nor Loughlin were placed in the same section with Perdomo.
 
 
 6
 In December 1992, the EPA's regional counsel, Gail Ginsberg, contacted Eric Cohen and informed him that there were two available positions for a GS-14 level attorney. Although the progression from a GS-11 to a GS-12 to a GS-13 level is normal within the EPA, few attorneys attain a GS-14 position, since there are only a limited number of that position available and it is the highest nonsupervisory level for an EPA attorney. After meeting with the three section chiefs, Cohen determined that there were five eligible attorneys for the GS-14 position, including Perdomo, Tennenbaum, and Loughlin. Eligibility was based upon satisfactory performance and a minimum number of years at the GS-13 level. The two other candidates were Caucasian, one male and one female. Cohen asked each of the three section chiefs for their recommendation as to who should be promoted. Mendoza recommended Perdomo. Section Chief Fox recommended Tennenbaum and Loughlin, both from her section. Section Chief Lee recommended Tennenbaum, Loughlin, and a third attorney who was in her section.
 
 
 7
 Cohen nominated Tennenbaum and Loughlin to be promoted and discussed his choice with Ginsberg, although Cohen could not recall the specifics of the discussion. In a deposition taken after the commencement of the lawsuit, Cohen offered the following criteria for his selection: "the ability to offer legal advice on an independent basis, the ability to analyze complex legal matters, and demonstration of litigation skills." However, Cohen further stated that he did the analysis of who should be nominated "in his head." Ginsberg approved the nominations and Cohen requested Section Chief Fox to prepare justification memos for Tennenbaum and Loughlin to be forwarded to the EPA headquarters in Washington D.C. Justification memos set forth how the nominated attorney meets the criteria of the EPA's internal guideline for the work level required of an EPA GS-14 level attorney. Such criteria include independence and responsibility over complex matters.
 
 
 8
 When Mendoza learned that Perdomo had been passed over for the promotion, he asked Cohen to reconsider his recommendations for the positions. Mendoza prepared a justification memo on her behalf, but Cohen refused to change his decision. After filing an administrative complaint with the EPA, Perdomo brought suit under Title VII, claiming that she had been passed over for promotion on the basis of her race.
 
 
 9
 The district court granted summary judgment for the EPA and Perdomo appeals.
 
 II. Analysis
 
 10
 We review the district court's grant of summary judgment de novo, viewing the record and all reasonable inferences drawn from the record in the light most favorable to Perdomo, the non-moving party. Sample v. Aldi Inc., 61 F.3d 544, 546 (7th Cir.1995). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "This standard is applied with added rigor in employment discrimination cases where intent and credibility are crucial issues." Sample, 61 F.3d at 547 (quoting Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038, (7th Cir.1993)).
 
 
 11
 Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or color." 42 U.S.C. Sec. 2000e-2(a)(1). Perdomo can approach her burden of proof in one of two ways: she may "directly" show that racial discrimination motivated the employment decision, Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985),[1] or, as is more common, she may rely on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Kirk v. Federal Prop. Mgt. Corp., 22 F.3d 135, 138 (7th Cir.1994). Perdomo has opted for the latter, burden-shifting approach.
 
 
 12
 Under the McDonnell Douglas framework, Perdomo must first establish a prima facie case of racial discrimination by a preponderance of the evidence. Sample, 61 F.3d at 547. As the EPA has conceded, Perdomo established a prima facie case by demonstrating that (1) she is a member of a protected group,[2] (2) she applied for and was qualified for the position sought, (3) the EPA rejected her for the position, and (4) the EPA granted the promotion to a person whose race was different than Perdomo's, but who had similar or lesser qualifications. Id. The prima facie case creates a presumption of discrimination, and the burden of production now shifts to the defendant who must produce a legitimate, nondiscriminatory reason for its action. Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir.1994). "The explanation must be legally sufficient to justify a judgment in favor of the defendant." Kirk, 22 F.3d at 138 (citing Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). If the defendant articulates a nondiscriminatory reason, it has satisfied its burden of production, and "the McDonnell Douglas framework--with its presumptions and burdens--is no longer relevant." St. Mary's Honor Center v. Hicks, --- U.S. ----, ----, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). The plaintiff, thus, resumes her original burden of proof and must establish by a preponderance of the evidence that the defendant's proffered reasons are pretextual. Id. "Pretext.... means a lie, specifically a phony reason for some action." Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995).
 
 
 13
 The fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination, and ... no additional proof of discrimination is required.
 
 
 14
 St. Mary's, --- U.S. at ----, 113 S.Ct. at 2749 (footnote and internal citation omitted). Although an inference of discrimination may be drawn from falsely stated reasons, such an inference is not compelled. Id. This is because the real reasons behind an employer's actions may be shameful or foolish, but unrelated to racial discrimination, in which event there is no liability. Shager v. Upjohn Co., 913 F.2d 398, 401 (7th Cir.1990). Thus, the ultimate burden of proving intentional discrimination remains with the plaintiff. St. Mary's, --- U.S. at ----, 113 S.Ct. at 2749.
 
 
 15
 Because Perdomo established a prima facie case, the burden shifts to the EPA to articulate a nondiscriminatory reason for its action. There is some dispute between the parties as to the reason offered by the EPA for failing to promote Perdomo. At an earlier stage of the litigation, the EPA contended that Perdomo was "not qualified" for the GS-14 level. However, as Perdomo points out and the EPA has conceded, Cohen did consider Perdomo "qualified" for the job, in terms of her tenure in the EPA and her GS-13 classification. Although Perdomo contends that this concession precludes summary judgment, it is apparent from the record that the EPA never considered her not "eligible" or competent for the promotion, but rather stated that she was not as qualified as the two candidates chosen. This reason is nondiscriminatory in terms of race and the McDonnell Douglas presumption of discrimination falls away; Perdomo now carries the burden of showing that the reason was untruthful.
 
 
 16
 As a threshold matter, initially we analyze the standard utilized by the district court, which was the following: "To satisfy his burden the plaintiff must prove both that the reason offered by the employer for his action is false and that discrimination was the real reason for the action taken." Although this accurately restates the proof required at trial, a plaintiff need not prove that the real reason for an employer's action was discriminatory in order to survive a motion for summary judgment. As we recently stated in the context of age discrimination:
 
 
 17
 The question before us in reviewing the grant of summary judgment is only whether ... [the plaintiff] produced evidence from which a rational fact-finder could infer that the company lied in saying that it fired ... him because he was an unsatisfactory worker. If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may rationally be drawn. This is the common sense behind McDonnell Douglas....
 
 
 18
 Anderson, 13 F.3d at 1124 (quoting Shager, 913 F.2d at 401). Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment. See Sample, 61 F.3d at 549 ("To survive summary judgment, [plaintiff] was required to produce evidence that created an issue of fact as to whether these nondiscriminatory reasons were pretextual."); Russell, 51 F.3d at 67 ("To survive a motion for summary judgment, [plaintiff] had to counter the company's affidavits with materials of evidentiary quality (such as affidavits or depositions, see Winskunas v. Birnbaum, 23 F.3d 1264, 1267-68 (7th Cir.1994)) that created an issue of fact as to whether the reasons offered by the company were sincere--in Title VII lingo, not "pretextual"--or other, discriminatory reasons had played a role in motivating the actions.").
 
 
 19
 After review of this standard and applying it to Perdomo's case, we hold that Perdomo has raised a genuine issue of fact as to whether Cohen honestly believed that Perdomo was less qualified than the chosen attorneys. Cohen stated that his final selection criteria were the ability of the respective applicants to analyze complex legal matters, the ability to provide legal advice independently, and demonstrated competence in litigation skills. Although the EPA does not explain how Tennenbaum and Loughlin were specifically more endowed than Perdomo with regard to Cohen's stated criteria, it asserts that Loughlin and Tennenbaum both had experience in private practice before joining the EPA, Loughlin was a judicial clerk, and that they had practiced law six years and two years longer, respectively, than Perdomo. However, Perdomo points out that at the time of promotion, the plaintiff-appellant had over five years experience as an EPA attorney, compared with Tennenbaum's three years and Loughlin's one-and-a-half years. Further, Perdomo provided evidence that she received four bronze medals, the EPA's highest award, for her work at the EPA as well as several letters of commendation, and that Tennenbaum and Loughlin received none; Perdomo scored 465 out of 500 in an appraisal evaluation, which was higher than either Tennenbaum or Loughlin's score, although each one of the three applicants was in the "outstanding" category; and, finally, Perdomo's supervisor, Mendoza, actively pushed for her promotion, believing her to be the most qualified for the job. Cf. Von Zuckerstein v. Argonne Nat'l Laboratory, 984 F.2d 1467, 1473 (7th Cir.) ("[plaintiff]'s failure to achieve the rank of full scientist appear[s] to lie in his sparse publication record and his inability to work independently. As a result, none of his superiors presented a case for his elevation...."), cert. denied, --- U.S. ----, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993). In sum, Perdomo has presented specific evidence that calls into question the veracity of the EPA's reason for failing to promote her: that she was not as qualified as the other candidates. Although a fact-finder at trial may conclude that the EPA honestly believed that Perdomo was not as qualified, and therefore not liable, when weighing or balancing Perdomo's credentials and qualifications against those of Tennenbaum and Loughlin, it is quite evident that her qualifications not only match those of the successful appointees but may very well exceed those of the two attorneys chosen.
 
 
 20
 By raising a genuine issue of material fact with regard to the truthfulness of Cohen's reason, Perdomo certainly survives the EPA's motion for summary judgment. Perdomo has also provided some evidence of racial discrimination, which goes towards her ultimate burden of proving intentional racial discrimination. Her section chief, Mendoza, a Hispanic man, was rarely asked to lunch with Cohen, who regularly dined with the other section chiefs, and the three Hispanic attorneys within Cohen's branch were all assigned to Mendoza's section, which Perdomo describes as "segregation." The district court found Perdomo's evidence of racial discrimination unpersuasive, but under McDonnell Douglas such evidence is not required: the trier of fact is permitted to infer discrimination from a finding that the employer's proffered reason was spurious. See Shager, 913 F.2d at 401-402 (plaintiff surmounted hurdle of summary judgment by presenting evidence, contrary to defendant's assertion, that he was a satisfactory employee, and the additional direct evidence presented of hostility towards older workers can be utilized to convince the fact-finder of the ultimate fact of discrimination).
 
 III. Conclusion
 
 21
 REVERSED.
 
 
 
 *
 The Honorable Donald E. Walter of the Western District of Louisiana, sitting by designation
 
 
 [1]
 The so-called "direct" method does not necessarily require direct evidence of discrimination, such as an employer's open acknowledgement of racial hostility; "Different kinds and combinations of evidence can create a triable issue of intentional discrimination," including direct and circumstantial evidence. Troupe v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir.1994)
 
 
 [2]
 The concept of a "protected group" originally referred only to racial minorities, but, under Title VII, any discrimination on the basis of race is unlawful. Kirk, 22 F.3d at 138 n. 1; McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 280, 96 S.Ct. 2574, 2578-79, 49 L.Ed.2d 493 (1976)