**Darlene JAMES, Plaintiff–Appellant,**

**v.**

**Michael SHEAHAN, in his capacity as Cook County Sheriff, Defendant–Appellee.**

No. 97–1785.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 12, 1997.

Decided March 4, 1998.

Susan P. Malone (argued), Chicago, IL, for Plaintiff–Appellant.

Richard A. Devine, Office of the State's Attorney of Cook County, Chicago, IL, John J. Murphy, Dianne McCullough (argued), Office of the State's Attorney of Cook County, Labor & Employment Division, Chicago, IL, for Defendant–Appellee.

Before ESCHBACH, COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Darlene James appeals the district court's grant of summary judgment on her claim that she was denied promotion to Cook County Sheriff's police officer on the basis of her sex and age, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, respectively. Although James was ostensibly qualified for the position, Cook County Sheriff Michael Sheahan (the "Sheriff") claims that James was not recommended for appointment to the position due to suspicion that her 1986 Merit Board test score was fraudulent. The district court concluded that James failed to demonstrate that the Sheriff's stated reason for not recommending her was a pretext for sex or age discrimination. We affirm.

## I. BACKGROUND

In 1986 James took the written exam required for hire as a corrections officer with the Cook County Sheriff's Office ("Sheriff's Office"). On January 4, 1988, the Sheriff's Office hired James for the position. As an employee of the Sheriff's Office, James could qualify for employment as a deputy sheriff or a Sheriff's police officer by fulfilling certain requirements. In June 1992, at the age of forty, James took and passed the written exam required for appointment as a Sheriff's police officer. Consequently, she was placed on the August 1992 certification list of applicants eligible to be hired.

James was thereafter interviewed by the Sheriff's Police Department, as are most applicants. In March 1993, the police department published a list of the applicants it had interviewed and their ratings, which were "highly acceptable," "acceptable," or "not acceptable." James was listed among the applicants rated as "highly acceptable."

The next hurdle was the Peace Officer Wellness Evaluation Report (the "POWER test"), a physical fitness test mandated by the State of Illinois as a prerequisite to enrollment in any Illinois certified police academy. As the number of police officer positions was limited, Martin Walsh, the Director of Operations, and Marynell O'Connell, the Personnel Director, would select the applicants they deemed most qualified to take the POWER test. In September 1993, James was selected to take the POWER test. James passed the test; however, she was not promoted by the Sheriff's Police Department. James was again called to take the POWER

test in December 1993. As before, James passed the test but was not promoted.

Walsh and O'Connell ultimately were responsible for recommending employees for appointment to the Sheriff's police force. They claim they never recommended James due to suspicion that her Merit Board test score had been falsified. (Although the record does not make clear which test score was altered—the 1986 test score or the 1992 test score—during oral argument James's counsel stated that the 1986 test score was the one at issue.) This suspicion began when Walsh received an anonymous telephone call sometime between September 14 and September 27, 1993. The anonymous caller was a man who recommended that Walsh look into James's background.

Walsh told O'Connell about the anonymous call, and she reviewed James's Merit Board file prior to the beginning of the October 1993 Sheriff's police academy class. O'Connell discovered that James's 1986 Merit Board test score had been erased and rewritten on the answer sheet. O'Connell could not verify whether the score had actually been changed because the file contained the answer sheet but not the answer key, and the Merit Board did not have the answer key.

O'Connell did not report the suspicious test score purportedly because she could not verify its falsity. However, O'Connell also did not recommend James for appointment as a Sheriff's police officer. Notwithstanding this decision, James's name has not been removed from the list of eligible candidates.

To place O'Connell's decision in context, we note that since April 1992, the United States Attorney's Office for the Northern District of Illinois and the Federal Bureau of Investigation ("FBI"), Chicago Office, have been investigating the corrupt practices of the Cook County Sheriff's Office and the Cook County Sheriff's Merit Board. The investigation targeted employees hired during Sheriff O'Grady's administration between 1987 and 1991, the period during which James was hired. The files of employees hired during this time period are being reviewed for false high school diplomas or high school equivalency ("GED") certificates, and

any evidence of altered test scores on Merit Board exams of corrections officers or deputy sheriffs. The FBI has named 351 employees who are believed to have altered test scores. James was not one of those named. However, James admits that "certain persons who were suspects or accused in the GED, [d]iploma, test results or other investigations were considered ineligible for hire as Sheriff's police officers."

James filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging sex and age discrimination. As evidence of this discrimination, James cites the gender and relative youth of the August 1992 certified candidates who were selected to take the POWER test and/or hired as Sheriff's police officers, who were allegedly less qualified than she.

The district court granted summary judgment to the Sheriff on both of James's claims. The court held that James had established a prima facie case of age and sex discrimination under the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), based on the Sheriff's admission that "[a]ll of the employees who took and passed the Power Test were similarly situated relative to the basic requirements for appointment," and the conclusion that "[w]hen a defendant's rationale for rejection is not plaintiff's deficiency to meet a basic qualification, the [case] is initially analyzed under the second step of the *McDonnell* framework." The latter proposition, however, ignores the Sheriff's arguments that James did not suffer any materially adverse employment action, and that everyone (other than James) on the August 1992 certification list who passed the POWER test and was a woman or over the age of 40 had been appointed to the position of Sheriff's police officer. Nevertheless, the district court held that James failed to produce sufficient evidence to show that the Sheriff's stated reason for not promoting James was a pretext for sex or age discrimination. This appeal followed.

## II. DISCUSSION

### A. *Standard of Review*

■ We review the district court's grant of summary judgment de novo. *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1308 (7th Cir.1997). Applying the same standards as the district court, all facts and inferences are viewed in the light most favorable to the non-moving party. *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997). Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). " 'This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues.' " *Sample v. Aldi Inc.*, 61 F.3d 544, 547 (7th Cir.1995) (citation omitted). However, " '[s]elf-serving assertions without factual support in the record will not defeat a motion for summary judgment.' " *Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir. 1994) (citation omitted).

### B. *Pretext*

■ James raises one issue on appeal.[1] She contends that there is evidence from which a rational finder of fact could determine that the Sheriff's stated reason for denying James the promotion—the altered test score—was either untrue or insufficient to justify the decision.

■ Having stated a reason for not recommending James for appointment as a Sheriff's police officer, the Sheriff has carried his "burden of producing 'evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.' " *Sample*, 61 F.3d at 547 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742,

---

1. The Sheriff challenges the sufficiency of James's appellate brief. James's argument section is devoid of references to the record save one. Although James's opening brief is not well written, she attempts to correct some of the errors in her reply brief. Taken as a whole, her briefs are not so deficient as to warrant dismissal under Rule 28(a)(6) of the Federal Rules of Appellate Procedure.

2748, 125 L.Ed.2d 407 (1993)). To prevail, James must come forward with sufficient evidence that "'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). Pretext "'means a lie, specifically a phony reason for some action.'" *Perdomo v. Browner*, 67 F.3d 140, 144–45 (7th Cir.1995) (quoting *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995)). "An employee may establish pretext indirectly by proving one of the following: (1) [d]efendant's explanation had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) ... the reason stated was insufficient to warrant the [adverse job action]." *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1291 (7th Cir.1997) (internal quotation marks and citation omitted).

James fails to come forward with any evidence showing that the altered test score was not the true reason she was not recommended for the promotion. On the contrary, James concedes that everyone on the August 1992 certification list who passed the POWER test and was a woman or over the age of 40 was appointed to the position of Sheriff's police officer, except her. James also admits that employees who were suspected or accused of false test results as part of the FBI investigation were not eligible for appointment as a Sheriff's police officer.

■ James argues that she was more qualified to be a Sheriff's police officer than the younger men who were hired for the position and that the Sheriff's failure to explain why these men were hired is evidence of pretext. To prove pretext, James must do more than demonstrate that she was qualified to be a Sheriff's police officer. She must rebut the nondiscriminatory reason given for why she was not promoted. James's arguments about her qualifications, no matter how much more qualified she was, do not show that the Sheriff's reason for not promoting her was untrue. *See Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996) (per curiam) ("That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it

is neither a sufficient nor a necessary condition.").

James next attempts to demonstrate pretext by disputing whether Walsh received the anonymous call. This dispute is based on nothing more than a mischaracterization of Walsh's deposition testimony. James states that "Walsh, who alleged[ly] received this telephone call, acknowledged that he does not answer his own telephone." Although Walsh did testify that his assistant answers his telephone, he never said that he did not take calls, as James implies. James also maintains that Walsh could not recall when he received the anonymous call. However, Walsh said, "I don't recall," in response to the question, "When during that time period did you receive this telephone call, sir?" "That time period" refers to the period from September 14 to September 27, 1993. Thus, we agree with the district court that James has failed to raise a genuine issue of material fact with respect to Walsh's receipt of the anonymous call.

■ James also asserts, without citation to the record, that "it is undisputed that the policies of the department require that where any officials receives [sic] notice or information indicative of corruption or alleged corruption, the official was required to immediately inform the appropriate authorities." O'Connell did not report James's apparently altered score. James claims that the Sheriff's failure to explain the reason for this deviation from policy is proof of pretext. On the contrary, the Sheriff did provide an explanation. O'Connell testified at her deposition that she did not report James's altered test score because she could not verify whether the score had actually been altered, as the answer key was nowhere to be found. James offers nothing to refute this explanation and thus fails to show how O'Connell's failure to report James's test score is evidence of pretext.

■ James contends that she was not on the FBI's list of employees who might be a suspect in their ongoing investigation, suggesting that if the FBI did not find anything untoward about her 1986 answer sheet, then neither should the Sheriff. The mere fact

that the FBI did not find James's answer sheet suspicious does not negate O'Connell's contrary conclusion. *See Sample*, 61 F.3d at 551 (" '[N]o matter how mistaken the firm's managers, Title VII ... do[es] not interfere.' ") (citation omitted). Perhaps it is unfair that O'Connell did not check other Merit Board exams to determine if such erasures were commonplace; however, unfairness is not discrimination.

■ In her reply brief, James points out that she took the written examination for appointment as a corrections officer in 1986, during the administration of Sheriff Elrod, O'Grady's predecessor. For the first time, James argues that because the FBI investigation concerned corrupt practices during Sheriff O'Grady's administration, not Sheriff Elrod's, the Sheriff had no reason to associate James with the FBI investigation. Arguments raised for the first time in a reply brief are waived. *United States v. Spaeni*, 60 F.3d 313, 317 (7th Cir.1995); *United States v. Berkowitz*, 927 F.2d 1376, 1391 (7th Cir.1991) (citing Fed. R.App. P. 28; Seventh Circuit Rule 28(f)). Therefore, further consideration of this argument is unnecessary.

### III. CONCLUSION

James has not shown that the Sheriff's reason for not promoting her was a pretext for age or sex discrimination. For the foregoing reasons, we AFFIRM the judgment of the district court.