Willie ECHOLS, Plaintiff,

v.

SELECT BEVERAGES,
INC., Defendant.

NO. IP 97–0211–C–Y/S

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 21, 1998.

Denise Larue, Haskin Lauter Cohen & Larue, Indianapolis, IN, for plaintiff.

James D. Witchger, Rocap Witchger & Threlkeld, Indianapolis, IN, Robert L. Jackson, III, Seyfarth Shaw Fairweather & Geraldso, Chicago, IL, for defendant.

YOUNG, District Judge.

## I. Introduction

On February 10, 1997, plaintiff Willie Echols ("Echols") filed his complaint against defendant Select Beverages, Inc., ("Select"), alleging employment discrimi-

nation pursuant to 42 U.S.C. § 1981 (the Civil Rights Act), 42 U.S.C. § 2000e *et seq.* (Title VII Claim), 29 U.S.C. § 621 *et seq.* (the Age Discrimination in Employment Act) and 29 U.S.C. § 1001 *et seq.* (the Employment Retirement Income Security Act of 1974, "ERISA").[1] Select filed a motion for summary judgment and a brief in support on November 17, 1997. Echols filed a brief in opposition to defendants' motion for summary judgment on January 12, 1998. Select filed a reply brief on January 30, 1998. Additionally, Echols filed a request for oral argument on defendants' motion for summary judgment on June 24, 1998.

The court having considered all the evidence, including affidavits, depositions and other supporting documentation, now enters its findings of fact and conclusions of law.

## II. Summary Judgment Standard

Pursuant to Trial Rule 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P.56(c). A fact is material if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is genuine where the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In determining whether a genuine issue exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Sys., Inc.,* 98 F.3d 262, 264 (7th Cir. 1996). While the moving party bears the burden of demonstrating the "absence of

evidence on an essential element of the non-moving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-moving party may not simply rest on the pleadings, but "must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial." *Id.* If the non-moving party fails to make a sufficient showing on an issue to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Ripberger v. Western Ohio Pizza, Inc.,* 908 F.Supp. 614, 617 (*citing Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548). "If, however, doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the non-moving party and summary judgment denied." *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989). *Palucki v. Sears Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989).

In the context of employment discrimination cases, the court applies the summary judgment standard with added rigor "where intent and credibility are crucial issues," *Perdomo v. Browner,* 67 F.3d 140, 144 (7th Cir.1995), keeping in mind, of course, that the non-moving party is not merely pointing to self-serving allegations with no evidentiary support. *Cliff v. Board of Sch. Comm'rs,* 42 F.3d 403, 408 (7th Cir.1994).

## III. Facts Most Favorable to Echols

### A. Echols Termination

1. Echols, an African-American, worked as a merchandiser for Select from 1990 until he was terminated on March 23, 1996. (Complaint ¶¶ 7, 18).

2. Echols was assigned to the "Set Group" as a merchandiser, along with his Caucasian counterpart Steve Capes ("Capes"). Both Capes and Echols were

1. Echols' original age discrimination claim has been abandoned. *See* Echols' opposition to defendant's motion for summary judgment, p.2 n.1. Because Echols chose to abandon that claim, the court dismisses, with prejudice, count II of Echols' complaint. Additionally, count III the ERISA/COBRA claim was dismissed by order of this court when it granted the stipulation of dismissal filed by both parties. That leaves count I, race discrimination, as the only remaining claim.

supervised by a Select regional manager, Bill Murray ("Murray"), who is also a Caucasian. (Complaint ¶ 9).

3. On Monday March 18, 1996, Echols and Capes were assigned to set up a display rack at a Kroger store in Franklin, Indiana. Upon completing that job, they were to proceed back to Indianapolis to set up a 2–liter bottle display in a McClure oil station. ("McClure") (Complaint ¶ 15; Echols Deposition, at 92–93, 99–100). The McClure job was not a mandatory assignment that day; it could have been completed at any time. (Echols Deposition, at 100–01).

4. Although there are no set hours and no set scheduling requirements, merchandisers are generally expected to work between 8–10 hours a day. (Echols Deposition, at 54–55; Defendant's Answer to First Interrogatories ¶ 17).

5. Capes was the lead merchandiser and would direct what jobs would be done first and how they would be done. He was the person everyone went to to find out what was going on and what needed to be done. He always set the schedule for the day and Echols would follow Capes' lead. (Echols Deposition, at 59–62, 99).

6. After the Kroger job Capes indicated to Echols that his shoulder hurt due to his recent surgery and that he was going home. He also told Echols to go home and not to worry about the McClure job; that it could get done at a later time. (Echols Deposition, at 92–93). Then they left in their respective company vehicles. (Echols Deposition, at 90–93).

7. On Wednesday, March 20, 1996, Murray questioned both Capes and Echols individually about the McClure site. First Echols told Murray that they had gone to the McClure site and set up the requested display. Capes told Murray that Echols had not gone to the McClure site, but that he had.[2] Murray then questioned both of them at the same time. Echols admitted that he lied about going to the McClure site. Capes continued to claim that he went to the McClure job site. Echols admitted that lying was sufficient reason to justify his termination. Murray suspended Capes and Echols pending an investigation. (Murray Deposition, at 92).[3]

8. Murray asked for Echols' key to the company truck and requested that Capes drive Echols home. (Echols Deposition, at 119). Murray did not request Capes to turn over his keys. (Murray Deposition, at 94).

9. Murray, along with another Select representative, went to McClure to verify that Capes had spoke with a McClure employee while visiting the store on that Monday. (Murray Deposition, at 97–104; *See also Supra* fn. 2)

---

2. Capes told several versions of what he actually did when he allegedly went to the McClure site. He first told Murray that he went into the McClure store and talked to the manager about the requested display rack. (Murray Deposition, at 97). At another point in time, he stated that he drove by the store and peered in the window to check what type of display was needed. (Capes Declaration ¶ 4–5). Under both scenarios Capes told Murray that he went back to the warehouse to see if they had the requested display to put in the McClure store. When he learned that the display was not in stock at the warehouse, it was then that he went home. (Capes Declaration ¶ 4–5). It should be noted that the display for the McClure store was in the back of Capes' work issued truck the entire time. Capes said he forgot that he had the requested display with him. (Echols Deposition, pp.114–15). The Capes declaration is not a sworn document, is not authenticated and is undated. Although the court cites to it for purposes of establishing Capes credibility, it in no way relies on it for any other purposes.

3. Both Echols and Capes were suspended with pay. Echols was terminated on March 23, 1996. Capes' discipline was in the form of a letter. It required him to: 1) fill out a daily report; 2) report to work in issued uniform; 3) call the switchboard before leaving at night to see if there were other assignments; and 4) report to work by 6:30 a.m. (plaintiff's materials in support, exh. 12). Some of those things were already required of him, but not always enforced. (Murray Deposition, at 106–07). Murray stated that this letter showed no real discipline. In fact, Murray admitted that Capes did not actually receive any discipline for this incident. (Murray Deposition, at 105–106).

10. Murray spoke with two McClure employees, Bass and Phillips, who were working on that Monday in question. (Murray Deposition, at 97–104). Both of these employees stated that no one from Select had been in the store that day. (Bass Deposition, at 17–20, Phillips Deposition, at 35). Upon learning that no one from Select had been to the McClure store on that day, Murray responded with the statement "I got him." (Bass Deposition, at 31).

11. After 23 years of service to Select, (Echols Deposition, at 8), Echols, an African-American, was terminated. (Murray Deposition, at 80–81). Capes, a Caucasian, was not disciplined for his role in this incident. (Murray Deposition, at 105–106). Echols was replaced by a Caucasian employee, Steve Robertson. (Murray Deposition, at 113).

**B. Echols Merit Increase Claim**

12. Echols received only a 2.5% merit increase in his recent evaluation despite "fully satisfactory" remarks in Murray's evaluation. (plaintiff's materials, exh. 4). Murray delayed Echols' evaluation for 7 months because he was too busy and he had not been there long enough to be sufficiently familiar with Echols' performance. (Murray Deposition, at 52–53; Letter to Equal Employment Opportunity Commission, Dated June 27, 1996). Echols normally received his performance evaluation in May, the anniversary of his start date. (Murray Deposition, at 50; Echols Deposition, at 79–80). However, Murray delayed this evaluation until December. Additionally, Murray made Echols' merit increase of 2.5% retroactive for 90 days only, not back to May when he was scheduled to have his evaluation. (Murray Deposition, at 52–53). Murray felt that this delay from May to December was "unfair" to Echols. (Murray Deposition, at 61).

13. Murray had been too busy and was not familiar enough with Capes' perfor-

mance as well. However, instead of continuing to delay Capes' evaluation Murray had another manager, Andy Downton, perform Capes' evaluation. (Murray Deposition, at 68). This was the "fair" thing to do for the employee. (Murray Deposition pp.68–69). Capes was given a 3% merit increase retroactive to the date when his evaluation should have taken place. (Murray Deposition, at 66–71).

14. Echols' 2.5% increase was based on Murray evaluating him at the level of "fully satisfactory," which according to Murray was the equivalent to average. Murray referred to "satisfactory" as below average. (Murray Deposition, at 57–58). Capes received his 3% merit increase based on a "fully satisfactory" rating despite being on a medical leave of absence for a period of time. (Murray Deposition, at 70–71).

15. Echols' evaluation reflected his leadership while Capes was out on disability: "Willie [Echols] has grown into a valuable asset in the reset crew. He has been forced into the lead position with Steve Capes on disability." (Murray Deposition, at 54). When Capes was there, he was the lead merchandiser, not Echols. (Murray Deposition, at 71).

Any other facts not cited above may be addressed and cited below.

**IV. Analysis**

There are two methods utilized to prove discrimination under Title VII: 1) by direct evidence; or 2) by the indirect burden shifting method articulated in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Kralman v. Illinois Dept. of Veterans Affairs,* 23 F.3d 150 (7th Cir.1994). Since Echols has articulated his claim under the burden shifting method, this court will utilize that approach as well.[4] Under the burden shifting method, the plaintiff must establish a prima facie case of discrimination. Once that is shown, the burden

---

4. Title VII claims (42 U.S.C. § 2000e *et seq.*) and § 1981 claims (42 U.S.C. § 1981) are analyzed in the same manner. *Bratton v.*

*Roadway Package System, Inc.,* 77 F.3d 168, 176 (7th Cir.1996).

shifts to the employer to rebut the presumption of discrimination by articulating a legitimate non-discriminatory reason for its adverse action. If the employer is able to make that showing, the plaintiff must come forward with evidence that shows the legitimate non-discriminatory reason was merely pretext.

## A. Prima Facie Case

■ To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, Echols must establish: 1) that he is a member of a protected class; 2) that he was performing according to Select's legitimate expectations; 3) that he suffered an adverse employment action; and 4) that similarly situated Caucasian individuals were treated more favorably. *Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 176 (7th Cir.1996); *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir.1994). The elements of a prima facie case are relatively easy to establish. *Pilditch v. Board of Educ.,* 3 F.3d 1113, 1117 (7th Cir.1993). For the following reasons, the court finds that Echols has met his burden in establishing a prima facie case of discrimination.

■ The fact that Echols is in a protected class and that he suffered an adverse employment action cannot be reasonably disputed. Echols is an African-American who was fired from his employment. These two facts effectively establish the first and third prongs of a prima facie case. Select disputes that Echols was performing to their legitimate expectations. It further disputes that a Caucasian employee, similarly situated, was treated more favorably.

Select argues that Echols did not perform up to their legitimate expectations when Echols lied about going to the McClure job site. In essence, Select argues that the very same reason for termination is justifi-

cation for defeating the prima facie case requirement of performing your job to the legitimate expectation of the employer.[5] While this may be a legitimate non-discriminatory reason for Echols' termination, it should not be used as a basis to defeat a prima facie case. It would be inappropriate at this stage to conclude that Echols' one lie, standing alone, would be sufficient to show that his work performance was not meeting Select's legitimate expectations. *See Williams v. Frank,* 757 F.Supp. 112, 117, n. 3 (D.Mass.1991) ("Put another way, it would be inappropriate to use the very act that is said to be discriminatory—the [reason for the discharge]—to defeat the plaintiff's *prima facie* case." *Id.*).

If the plaintiff is able to point to objective facts that establish that his or her performance met the legitimate expectations of the employer, the second prong of the prima facie case may be established. *See Pilditch,* 3 F.3d at 1117. Given the fact that Echols received a "fully satisfactory" rating in his evaluations, and "has grown into a valuable asset in the reset crew," (Murray Deposition, at 54), the court finds that Echols has established a prima facie case that he performed to the legitimate expectations of Select.

■ Under the fourth prong, the plaintiff must establish that similarly situated employees of a different race were treated more favorably. This prong is not so specific in light of the Supreme Court's decision in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *See also Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 158–59 (7th Cir.1996). The question to be asked is "whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground." *Carson,* 82 F.3d at 159. In other words, was

5. One court noted that this type of argument would be circular because whenever an employer fires an employee for a certain act, that "act indicates that the employee was not performing up to the employer's expectations, at least in some subjective sense." *Whitchurch v. Apache Products Co.,* 916 F.Supp. 809, 815

(N.D.Ill.1996). *See also Pilditch v. Board of Educ.,* 3 F.3d 1113, 1117 (7th Cir.1993) (The inquiry is whether the plaintiff can show "objective evidence that he is sufficiently competent to satisfy the legitimate expectations of an employer." *Id.*).

the plaintiff's race the true reason he was fired?

A plaintiff needs to establish that he was treated differently because of his race. He may be able to do this in several ways. For example, he may be able to show that: 1.) a person of a different race was hired to replace him after he was terminated; 2.) a person of a different race, otherwise similarly situated, was treated differently or more favorably; or 3.) a person of a different race was promoted or hired instead of him. There must be a logical connection between the person's race and the adverse action. Here Echols has initially established that: 1.) a Caucasian person replaced him; and 2.) another Caucasian employee, Capes was treated more favorably than himself, an African-American. These facts are sufficiently established and satisfy the burden for a prima facie case of discrimination. *See Pilditch,* 3 F.3d at 1117. The court finds that Echols has met his burden under the fourth prong of the prima facie case and has established a prima facie case of discrimination. Therefore, the burden shifts to the employer, Select to present a legitimate non-discriminatory reason for their action.

**B. Legitimate Non–Discriminatory Reason**

■ Echols admitted that he lied about going to the McClure site and was told he was fired because he lied. Additionally, Echols stated that he knew lying to his supervisor was justification for his termination. This is a legitimate non-discriminatory reason presented by Select. There can be no dispute that Select has met its burden in rebutting the presumption of discrimination established by plaintiff's prima facie case. The burden now shifts back to Echols to present evidence that could lead a jury to reasonably infer that Select's legitimate non-discriminatory reason was pretext.

**C. Pretext**

■ To defeat a motion for summary judgment, the plaintiff must provide suffi-cient evidence that the reasons offered by the moving party were pretext for the discriminatory practice. *James v. Sheahan,* 137 F.3d 1003, 1006–1007 (7th Cir. 1998); *See also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). As quoted by the *Sheahan* Court, "pretext 'means a lie, specifically a phony reason for some action.'" *Sheahan,* 137 F.3d at 1007 (*quoted in Perdomo,* 67 F.3d at 144–45, *quoting Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995)). "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Courtney v. Biosound,* 42 F.3d 414, 418 .(7th Cir.1994). Furthermore, a party's own deposition "can constitute affirmative evidence to defeat a summary judgment motion." *Id.* at 418. The plaintiff's rebuttal evidence of pretext must specifically address the employer's proffered reason for the adverse action. *La Montagne v. American Convenience Prods., Inc.,* 750 F.2d 1405, 1414 (7th Cir.1984). Additionally, the plaintiff must rebut all the proffered reasons given if the moving party has offered more than one reason for their adverse action. *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 398 (7th Cir.1997); *See also Wolf v. Buss Am., Inc.,* 77 F.3d 914, 923 (7th Cir.1996) *cert. denied,*519 U.S. 866, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996).

■ There are several ways a plaintiff may establish an inference that the employer's reasons were merely pretext. The plaintiff can indirectly prove: (1) the defendant's explanation had no basis in fact; (2) the explanation was not the real reason for the adverse action, i.e. the reasons given did not actually motivate the adverse action; or (3) the reason stated was insufficient to warrant an adverse action. *See Bahl v. Royal Indem. Co.,* 115 F.3d 1283, 1291 (7th Cir.1997); *See also Buss Am., Inc.,* 77 F.3d at 919; *Collier v. Budd Co.,* 66 F.3d 886, 892 (7th Cir.1995);

*Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir.1993). Select has given only one reason for Echols' termination: he lied to his supervisor. Echols' rebuttal of pretext must specifically address that reason.

Echols is unable to show that the explanation has no basis in fact; nor can he show that the reason stated was insufficient for the adverse action. Echols admitted he lied and that lying was sufficient justification for his termination. Therefore, Echols must show that the explanation was not the real reason for the adverse action. In other words, the reason given did not actually motivate the adverse action, but his race did.

On its face, Echols is unable to meet that requirement. Just because he is African-American and was terminated from his job does not equate to discrimination, especially where there is a presumably legitimate reason for the termination. However, looking at the facts and particular circumstances of this case could lead a reasonable jury to conclude that Select's reason for terminating Echols was pretext. Select argues that because Echols actually lied there can be no discrimination or pretext.[6] But whether Echols lied is not the inquiry. The inquiry is whether that lie is the true reason for Echols' termination.

If Murray did not believe Capes' story about going to the McClure site, then Echols and Capes were similarly situated, but they were not given the same "discipline." The court looks to see if there is any evidence that put Murray's intent or honest belief at issue.[7] Select argues that Murray was honest in his belief he had no proof Capes was lying and therefore could not terminate him. Unless Echols comes forward with evidence to the contrary, the case should be dismissed. If Echols presents some evidence that would infer Murray was not honest in his reason, the case should proceed. If there is conflicting evidence, the credibility and intent of the witnesses should be left for the jury to resolve.

The difficulty in understanding this case lies with Murray's intent when disciplining Capes. If Capes is not involved in this case, summary judgment would be appropriate because Echols, standing alone, could not show that the "lying" reason was pretext. However, bringing Capes into the picture gives Echols sufficient evidence to establish pretext.

 There is enough evidence that Murray did not believe Capes' story since Murray went to the McClure site to verify it. Both McClure employees told Murray that no one from Select had been there that day. When Murray asked them if they were sure, they indicated that they were. At that point Murray stated "I got him." (Bass Deposition, at 31). If this statement is believed, it may show that Murray knew that Capes was lying.[8] A reasonable jury could conclude that Murray was not honest in the reason he gave for not terminating Capes. If he was not honest and in reality he knew Capes was lying, then Capes and Echols were treated differently for the exact same conduct.[9]

---

**6.** If the reason for termination is legitimate, or right, there can still be discrimination if the employer terminated the employee because of his race, and used the legitimate reason as a crutch to stand on. *See Venters v. City of Delphi*, 123 F.3d 956, 973 n. 7 (7th Cir.1997)(*citing Pilditch*, 3 F.3d at 1118 n. 2); *See aslo* 42 U.S.C. §§ 2000e–2(m), e–5(g)(2)(B). This is illustrated here with some evidence that a similarly situated employee of a different race was not terminated for the very same conduct.

**7.** The court phrases the inquiry as such because Murray's honest belief about his treat-

ment of Capes may show his intent to treat African-Americans differently than Caucasians. We know Echols lied. But if Capes lied too, and Murray knows he lied, then there may be an inference of discrimination because both did not receive the same "discipline." Therefore, Murray's assessment of Capes' story is an integral part of this case.

**8.** At that point, Murray already knew Echols had lied.

**9.** The court is not saying that Murray may have been mistaken in his belief about Capes' lying. *See e.g. Crim v. Board of Educ. of Cairo*

Title VII prohibits different disciplinary measures for different races based on the same conduct. *Burdette v. FMC Corp.*, 566 F.Supp. 808, 815 (S.D.W.Va.1983). *See e.g., Croker v. Boeing Co. (Vertol Div.)*, 437 F.Supp. 1138, 1191 (E.D.Pa.1977); *Worthy v. United States Steel Corp.*, 616 F.2d 698, 703 (3d Cir.1980) *citing Corley v. Jackson Police Department*, 566 F.2d 994, 999–1000 (5th Cir.1978); *Capers v. Long Island R.R.*, 429 F.Supp. 1359, 1366 (S.D.N.Y.1977). . The United States Supreme Court stated that evidence showing Caucasian employees involved in the same acts of comparable seriousness were nevertheless retained when employees in a protected class were terminated may constitute pretext. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817. Since Murray's intent and credibility are at issue, summary judgment would be inappropriate at this stage. *See Perdomo*, 67 F.3d at 144. Since there are doubts remaining on material facts, summary judgment must be denied. *See Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989).

 Furthermore, a discriminatory motive can be inferred in some situations from the mere fact of differences in treatment. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *See also Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996); *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1420 (7th Cir.1986). A "fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by suspicion of mendacity) may, together with the elements of a prima facie case, suffice to show intentional discrimination." *Tincher v. Wal–Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir.1997) *quoted in Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir.1995)

(*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407(1993)). If a jury were to disbelieve Murray, discrimination may be shown.

The incidents alleged put Murray's credibility and his motive and intent to fire Echols at issue. Echols has shown that he was given a lesser merit raise than Capes despite having the same evaluation rating and despite the fact that Capes had been on medical leave for a period of time during the period of evaluation. This lends some support that Murray may have had a different motive than the one given when he fired Echols. Furthermore, when given his merit raise, it was made retroactive for only 90 days and not made retroactive to his anniversary start date as is normal.

Additionally, Murray "unfairly" delayed Echols' evaluation for seven months because he was too busy and was not sufficiently familiar with Echols' work to evaluate him. Capes' evaluation was delayed for the very same reasons given for Echols delay. But to prevent Capes' delay from going beyond a few months, Murray asked another manager, Andy Downton, to evaluate Capes. Murray stated that was the "fair" thing to do for the employee. This also lends support to the argument that Murray was not honest in his reason for firing Echols.

### D. Conclusion

Echols has met his initial burden of establishing a prima facie case of discrimination. Select also met its burden with a legitimate non-discriminatory reason for its adverse action. In turn, Echols presented evidence from which a reasonable jury could conclude that Select's reason was merely pretext. This evidence creates

*Sch. Dist. No. 1*, 147 F.3d 535 (7th Cir. 1998)(even if the reasons were mistaken, illconsidered or foolish, as long as the employer honestly believed in those reasons then pretext has not been proven). *See also Wolf v. Buss Am., Inc.*, 77 F.3d 914, 919 (7th Cir. 1996)(an employer acting incorrectly does not

demonstrate pretext; the employee must show that the employer did not honestly believe in the reason for the termination). Rather, the court is stating that Echols has presented enough evidence to put Murray's motive and intent at issue.

genuine issues of material fact that defeats a motion for summary judgment.

## V. Judgment

Echols has presented genuine issues of material fact regarding his claim of race discrimination. It is therefore ordered, adjudged and decreed that Select's motion for summary judgment is denied.

## VI. Oral Argument

Because the court has denied Select's motion for summary judgment, Echols' request for oral argument on that Motion is hereby denied.