Sherman P. **WEBSTER**, Plaintiff,

v.

**WISCONSIN POWER & LIGHT COMPANY**, Defendant.

No. 98–C–643.

United States District Court,
E.D. Wisconsin.

June 22, 1999.

Ralph J. Ehlinger, Ehlinger & Krill S.C., Milwaukee, WI, for plaintiff.

Brian A. Price, Emery K. Harlan, Gonzalez, Seggio, Birdsall & Harlan, LLP, Milwaukee, WI, for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Plaintiff Sherman Webster claims that Wisconsin Power & Light Company ["WPL"] denied him a promotion from his position as a "line truck operator" to a position as a "heavy duty earth borer operator" because he is a Native American. WPL has moved for summary judgment, claiming that it denied him the promotion only because he incorrectly answered a number of safety-related questions during his interviews, whereas the only other applicant—a Caucasian named Richard Voigt, who got the promotion—did a better job of answering the safety questions.

The defendant contends that Mr. Webster cannot make out a prima facie case of discrimination under the indirect, burden-shifting method of proof (*see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)) because he cannot show that the other applicant was equally or less qualified. WPL also argues that even if Mr. Webster has made a prima facie showing, he cannot establish that its reason for not promoting him was a pretext. I find that the plaintiff has raised a genuine issue of material fact as to both issues and will deny the motion for summary judgment.

Before turning to the evidence that gives rise to these issues of fact, I must address the defendant's related motion to strike certain deposition testimony and affidavits relied on by the plaintiff in opposition to the summary judgment motion. The deposition testimony is that of the plaintiff's proferred expert on the subject of racial stereotyping, Dr. Jerilyn Grignon. The court will deny the motion to strike as moot as it relates to this witness because the court does not need to rely on her testimony in order to deny the motion for summary judgment. In so doing, I realize that some of the defendant's objections to her testimony may require resolution during subsequent proceedings.

The remainder of the defendant's motion to strike relates to the affidavits of two WPL employees who the defendant contends were improperly contacted ex parte by the plaintiff. This part of the defendant's motion will also be denied. The plaintiff has cited authority to suggest that Wisconsin's Rules of Professional Responsibility did not forbid the ex parte contact under the circumstances of this case. Moreover, the defendant's motion depends on the claim that the ex parte contact was made to obtain evidence that would be used as a party admission. The court is not persuaded that the testimony from these witnesses is offered as an admission on the part of WPL. Finally, excluding this evidence would not change the court's disposition of the motion for summary judgment.

Returning to that motion, I find that the defendant has not met its burden of demonstrating that the plaintiff cannot make out a prima facie case on the grounds that he was less qualified than his competitor. *See Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir.1995) (to establish a prima facie case, plaintiff must show *inter alia* that defendant gave the promotion to a person of different race with similar or lesser qualifications). The plaintiff has raised a factual dispute as to WPL's claim that Mr. Webster was less qualified because he did worse on the safety questions, as discussed in greater detail below. There is also evidence that Mr. Webster had a strong safety record and had more seniority than Mr. Voigt (which might entitle him to the position if he was otherwise equally qualified). (Plaintiff's Proposed Findings of Fact ["PPFF"] ¶¶ 3, 5, 45.) The defendant concedes that except for Mr. Webster's answers to safety and technical questions, he and Mr. Voigt were equally qualified. (DPFF ¶¶ 65–66.) A reasonable jury could find from this evidence that Mr.

Webster was equally or perhaps more qualified than Mr. Voigt for the promotion.

This showing shifts the burden to the defendant, which must offer a nondiscriminatory reason for its decision. *Id.* The plaintiff concedes that it has done so and therefore the burden shifts back to Mr. Webster, who must produce evidence that WPL's stated reason for not promoting him was a pretext, i.e. a lie or phony reason. *Id.*

I believe Mr. Webster has made a showing sufficient to survive summary judgment. Like most plaintiffs, he has not done so by producing an admission of guilt; instead he offers what the court of appeals has called a "mosaic" of circumstantial evidence—a combination of "pieces of evidence none conclusive in itself but together" permitting an inference of discrimination. *Troupe v. The May Dep't. Stores Co.,* 20 F.3d 734, 737 (7th Cir.1994).

Some of the evidence offered by the plaintiff has questionable relevance and probative value, such as claims that the defendant was not sufficiently sensitized to Mr. Webster's "communication patterns as a Native American" or his "characteristic Native American reticence". If the defendants chose not to promote Mr. Webster solely because he was less articulate and outgoing than his competitor, they might be guilty of poor business judgment, but not intentional race discrimination. *See Diettrich v. Northwest Airlines, Inc.,* 168 F.3d 961, 966 (7th Cir.1999). Even excluding this evidence, however, the plaintiff has offered other, often relevant evidence that raises an issue of fact as to pretext.

This includes the following:

1) Mr. Webster claims that he did, in fact, answer correctly the safety questions that WPL maintains he got wrong. (PPFF ¶ 3, Plaintiff's Response to DPFF ["PR"] ¶ 51, 57, 59, 60, 62.) Mr. Webster's claim is not merely an unsupported, self-serving statement but is corroborated by other evidence, discussed below.

2) The interviewers' notes, though vague, in some instances do not clearly support the interviewers' claims that he answered certain questions incorrectly. At other times, the notes actually support Mr. Webster's claim that he gave the right answers to certain questions WPL contends he answered incorrectly. The notes also can be read to corroborate Mr. Webster's claim that the interviewers asked him harder questions, overlooked some of Mr. Voigt's incorrect or mediocre answers, and minimized some of the plaintiff's correct responses. (Marquardt Aff., Exhs. A & B; Brodbeck Aff., Exhs. A & B; Plaintiff's Brief at 12–14.)

3) Several of his coworkers, including his immediate supervisor, have stated that Mr. Webster knows exactly how to apply the safety rules and has done so successfully without incident for years. (PPFF ¶¶ 3, 5.)

4) The interviewers made remarks in their evaluations of Mr. Webster that were consistent with negative stereotypes of Native Americans, while making comments about his competitor that were consistent with positive stereotypes of Caucasians. (PPFF ¶¶ 20–25; Ehlinger Aff., Exh. G at Exh. 9.) The defendant argues that the particular comments in this case were race-neutral on their face, and that standing alone, they have little or no evidentiary value. The court doubts the correctness of the plaintiff's suggestion that the comments themselves show that the interviewers actually held and applied racial stereotypes. However, the comments may take on more significance when considered in combination with other evidence, especially if the jury disbelieves the reason given for not promoting the plaintiff.

5) Mr. Voigt received training on the heavy duty earth borer before his interview, contrary to the defendant's interrogatory response that no such training was given, while Mr. Web-

ster's request for such training was denied. (PPFF ¶ 35, 37.)

6) Mr. Webster's interviews were 20 minutes shorter than his competitor's. (PPFF ¶ 46.)

All of this evidence, considered as a whole, would permit a jury to find that the stated reason for not promoting Mr. Webster was a pretext. This evidence, along with the elements of a prima facie case, might permit the jury to infer the ultimate fact of intentional discrimination without the need for additional proof. *Perdomo*, 67 F.3d at 145. Furthermore, although a plaintiff need not go beyond a showing of pretext in order to survive summary judgment (*id.*), some of the evidence summarized above may plausibly suggest a discriminatory motive as the reason behind the pretext. The court will therefore deny the motion for summary judgment.

Therefore, IT IS ORDERED that the defendant's motion to strike be and hereby is denied.

IT IS ALSO ORDERED that the defendant's motion for summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that the plaintiff shall be entitled to recover its costs in connection with the motions.