In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3926

Karen Bell, Lolita Hill, Farro Assadi,
and Christina Prasinos,

Plaintiffs-Appellants,

v.

Environmental Protection Agency and
Carol M. Browner, in her official
capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 97 CV 6349--Charles R. Norgle, Sr., Judge.

Argued May 19, 2000--Decided November 6, 2000

Before Flaum, Chief Judge, and Manion and
Williams, Circuit Judges.

Williams, Circuit Judge.  The four
plaintiffs-appellants--Karen Bell, Lolita
Hill, Farro Assadi, and Christiana
Prasinos--allege that they were
unlawfully denied promotions to
Master/Expert positions within the
Environmental Protection Agency ("EPA").
Bell and Hill are African-Americans and
allege Title VII discrimination because
of their race. Assadi and Prasinos are
naturalized citizens--Assadi was born in
Iran and Prasinos was born in Greece--and
allege Title VII national origin
discrimination./1 In addition to these
claims, Bell, Hill, and Prasinos make a
retaliation complaint. The district court
granted summary judgment to the EPA on
all counts. Plaintiffs appeal./2 For
the reasons stated herein, we affirm in
part and reverse in part.

I

The four plaintiffs worked as
environmental engineers in the Air

Enforcement and Compliance Assurance section of the Air and Radiation Division of the EPA's Region V office in Chicago. In 1996, the EPA posted four new Regional Expert and Master positions, the next level of promotion for engineers. The EPA required all candidates to submit a written application, a copy of their most recent annual performance appraisal, and a supplemental qualification statement. Sixteen eligible candidates, including plaintiffs, applied for the four Master positions. For purposes of evaluating the applicants, the EPA submitted a rating plan that described the knowledge, skills, and abilities an applicant needed to have and listed five factors to be considered. Assadi and Prasinos each received a perfect score, while Bell received a 69 and Hill received a 63 (out of a possible 75). Two of the individuals who were ultimately selected for the position received perfect scores while the other two were rated at 69.

Three EPA section chiefs--William MacDowell, Diane Sipe, and Peter Spyropoulos--decided that they would interview the candidates and make the final selection as a panel. They agreed to focus on the written applications and on how well the applicants responded to the agreed-upon interview questions. They intended to reach a unanimous decision on the four candidates but were unable to do so. They did reach a consensus on three candidates: Denny Dart, Katherine Kieth, and Emmett Keegan. The Panel submitted the impasse on the fourth position to their supervisor, George Czerniak. Ultimately, Linda Hamsing was selected as the fourth successful candidate. All four are white, native-born Americans.

After the EPA announced the promotions, plaintiffs sent a memorandum to Czerniak, Sipe, MacDowell, and Spyropoulos raising questions about the selection process. Czerniak responded, but plaintiffs were unsatisfied and filed formal complaints with the Equal Employment Opportunity Commission on February 5, 1997. In September 1997, plaintiffs filed their four-count complaint. The district court granted summary judgment to the EPA on all counts.

II

We review de novo a district court's

grant of summary judgment, considering the evidence in a light most favorable to the nonmovant and drawing all reasonable inferences in favor of the nonmovant. See Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000). Summary judgment is only appropriate when the pleadings, depositions, and other materials in the record demonstrate that there are no disputed facts and the movant is entitled to summary judgment as a matter of law. See id. (citing Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

Plaintiffs make various disparate treatment claims against the EPA, alleging race and national origin discrimination. Because they cannot show any direct evidence of discrimination, plaintiffs rely on the burden-shifting approach delineated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, plaintiffs must first make out a prima facie case of discrimination by demonstrating that (1) they belong to a protected group; (2) they applied for and were qualified for the positions sought; (3) the EPA rejected them for the positions; and (4) the EPA granted promotions to persons who were not in the protected groups. See Stockett v. Muncie Ind. Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000); Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1397 (7th Cir. 1997). Once plaintiffs establish their prima facie case, we presume that they were discriminated against, and EPA must articulate a legitimate, nondiscriminatory reason for its employment action. McDonnell Douglas, 411 U.S. at 802; Stockett, 221 F.3d at 1001; Sirvidas v. Commonwealth Edison Co., 60 F.3d 375, 377-78 (7th Cir. 1995). Once the EPA has met this production burden, plaintiffs must establish that the reason offered by the EPA is merely a pretext for discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Stockett, 221 F.3d at 1001; Sirvidas, 60 F.3d at 378. In the case at bar, both sides agree that plaintiffs have established a prima facie case and that the EPA has articulated a nondiscriminatory reason for promoting others instead of plaintiffs. They disagree, however, whether plaintiffs have established that EPA's proffered reasons are pretextual.

Plaintiffs cannot prevail at trial if the fact-finder finds that the EPA "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 890 (7th Cir. 1997). This court "does not sit as a super-personnel department that reexamines an entity's business decisions." Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986); accord Debs v. Northeastern Ill. Univ., 153 F.3d 390, 396 (7th Cir. 1998). However,

[t]he question before us in reviewing the grant of summary judgment is only whether . . . [the plaintiff] produced evidence from which a rational fact-finder could infer that the company lied in saying that it fired . . . him because he was an unsatisfactory worker. If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may reasonably be drawn. This is the common sense behind McDonnell Douglas.

Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994); see also Perdomo v. Browner, 67 F.3d 140, 145 (7th Cir. 1995) (ruling that in order to survive a summary judgment motion, plaintiffs "need not prove that the real reason for [the EPA's] action was discriminatory"). "Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes summary judgment." Perdomo, 67 F.3d at 145; accord Reeves v. Sanderson Plumbing Prods, Inc., 120 S. Ct. 2097, 2110 (2000) (ruling in an analogous Rule 50 context that "the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses'" (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure sec. 2529, p. 300 (2d ed. 1995))).

The EPA's asserted reason for not promoting plaintiffs is that they were not the best qualified candidates. The district court complained that plaintiffs took a "shotgun" approach to the pretext issue by presenting several categories of

evidence that purport to demonstrate pretext. After the district court reviewed the evidence, it found, as a whole, that plaintiffs failed to raise a question of material fact on the issue of pretext. Plaintiffs argue on appeal that the district court erred in resolving disputed factual issues, drawing unsupported inferences in favor of the EPA, and excluding admissible evidence.

A. Employment Discrimination

Plaintiffs contend that there is abundant direct, circumstantial, and statistical evidence supporting their employment discrimination claims. Plaintiffs argue that (1) they were demonstrably better qualified than the selectees; (2) they introduced unrebutted statistical evidence that supported their claims; (3) EPA's violations of their normal procedures casts doubt on the legitimacy of their promotion decisions; (4) the credibility of the EPA's story is drawn into question by illogical and inconsistent statements and rationales offered by the EPA's decisionmakers; and (5) anecdotal evidence presented by plaintiffs demonstrates discriminatory animus by the decisionmakers and a pattern and practice of discrimination. The district court correctly found that (1) the EPA did not deviate from its own promotion procedures; (2) the alleged inconsistent statements merely illustrated that the panel was having difficulty reaching a unanimous decision; and (3) the anecdotal evidence was not connected to plaintiffs' discrimination claims. However, we find that plaintiffs' comparative qualifications and their statistical evidence preclude summary judgment.

1. Comparative Qualifications

First, plaintiffs argue that the EPA's reasons were pretextual because they were, in fact, more qualified than those employees chosen for promotion. Specifically, all four plaintiffs had been employed with the EPA for a longer period of time than any of the selectees. Moreover, several of the plaintiffs had received more service achievement awards than the selectees: Bell received more awards than any of the selectees;

Prasinos and Assadi received as many awards as one selectee and more than the other three selectees; and Hill received more awards than three of the selectees. Finally, Assadi and Prasinos received perfect scores on the preliminary candidate rankings and Bell's score, while less than two of the selectees, equaled the other two. Hill's score, however, was less than the selectees./3

Nonetheless, the district court ruled that plaintiffs' argument was not persuasive. According to the district court, "the issue is whether the EPA honestly believed that it promoted the most qualified persons for the positions." The district court is not quite correct. At the summary judgment stage, the district court evaluates whether plaintiffs have produced evidence from which a fact-finder could infer that the employer lied about the reasons for promoting the selectees. We recently addressed a similar situation in a case involving the EPA:

In sum, [the plaintiff] has presented specific evidence that calls into question the veracity of the EPA's reason for failing to promote her: that she was not as qualified as the other candidates. Although a fact-finder at trial may conclude that the EPA honestly believed that [the plaintiff] was not as qualified, and therefore not liable, when weighing or balancing [the plaintiff's] credentials and qualifications against those of [the selectees], it is quite evident that her qualifications not only match those of the successful appointees but may very well exceed those for the two attorneys chosen.

Perdomo, 67 F.3d at 146.

Just as in Perdomo, a fact-finder in the instant case could reasonably find that the EPA was dishonest when it concluded that the selectees were more qualified for the promotions than the plaintiffs were. Plaintiffs had more experience, received more performance awards, and scored at or near the top in the preliminary candidate objective rankings. The EPA cannot escape scrutiny merely by claiming that they selected the most qualified candidates. Furthermore, an internal EPA document suggests that the EPA did not select the best candidates.

Plaintiffs obtained, in discovery, a memorandum written by one of the Panel members prior to any decision being made regarding one of the open Master positions. The memorandum stated:

The issue of selection causes me a great concern. . . . This is the first time in my career that I cannot support an issue which is so clear in my mind and where I think others are totally out of reality. We want to select the best. . . . I cannot see that [selectees] Kathy [Kieth] and Denny [Dart] are superior to [plaintiff] Farro [Assadi]. I cannot support them because I believe they are not the best. . . . I consider Farro [Assadi] better by far than all of them and [plaintiff] Karen [Bell] better than . . . [selectee] Linda [Hamsing].

The district court rejected this evidence as inadmissible hearsay. Specifically, the district court found that the evidence did not fall within the Fed. R. Evid. 803(3) hearsay exception, allowing a statement of the declarant's then existing state of mind./4 The district court rejected use of the memorandum because it found that plaintiffs--at least Assadi and Bell--were attempting to use it, not to establish the declarant's state of mind, but to prove that they were, in fact, better qualified than the selectees.

Plaintiffs were attempting to use the memo, however, to counter the EPA's assertion that it honestly believed it was promoting the four best candidates. Plaintiffs made this argument clear in their 12M response. Moreover, the memorandum is admissible under Fed. R. Evid. 801(d)(2)(D) as an admission by a party opponent./5 Furthermore, the memorandum provides some support for plaintiffs' argument that the EPA's "more qualified candidates" statement was dishonest. Consequently, the district court should have admitted the memorandum.


2.  Statistical Evidence

Next, plaintiffs argue that the district court completely disregarded their statistical evidence of discrimination. Plaintiffs' statistical report analyzed

all EPA promotions from 1995 through 1998 in the upper Midwest region for two positions, including the Masters position at issue in this case. Plaintiffs' expert found a statistically significant difference between the likelihood that foreign born applicants receive promotions and that other applicants receive these promotions. The expert also found that African-American employees receive such positions at a lower rate than other employees, although the difference was not statistically significant./6 The district court refused to include these findings in its summary judgment analysis because it concluded that the relevant labor market for a statistical analysis was the 16 qualified applicants for the Masters positions and that this sample size was too small, as a matter of law, to establish pretext.

While we have rejected efforts to use statistics as the primary means of establishing discrimination in disparate treatment situations, see Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 349 (7th Cir. 1997), it can be utilized. "In conjunction with other evidence of disparate treatment, however, statistics can be probative of whether the alleged disparity is the result of discrimination." Kidd v. Illinois State Police, 167 F.3d 1084, 1101 n.16 (7th Cir. 1999) (citing McDonnell-Douglas, 411 U.S. at 805).

Moreover, this is not a systemic (pattern and practice) disparate treatment case. In a pattern and practice disparate treatment case, statistical evidence constitutes the core of a plaintiff's prima facie case. Within the McDonnell-Douglas individual disparate treatment model, however, statistical evidence is only one small part of a substantial web of evidence indicating pretext. Consequently, evidence of systemic disparate treatment is relevant to and probative of the issue of pretext even when it is insufficient to support a pattern and practice disparate treatment case. See Bruno v. W.B. Saunders Co., 882 F.2d 760, 767 (3d Cir. 1989) (ruling that "in individual disparate treatment cases such as this, statistical evidence, which may be helpful, though ordinarily not dispositive, need not be [as] finely tuned" as in the class action--systemic

employment practices--cases).

The usefulness of statistics in an individual treatment case to show pretext "depends on all the surrounding facts and circumstances." International Bhd. of Teamsters v. United States, 431 U.S. 324, 340 (1977). Statistical evidence, therefore, should be admitted as evidence if it meets the Fed. R. Evid. 401 requirement that it "make[s] the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Accord Bruno, 882 F.2d at 767. Although the statistics in this case may be too broad to support a prima facie case of systemic disparate treatment, they can be admitted as probative evidence indicating pretext.

A valid statistical analysis must encompass the relevant labor market. See Kidd, 167 F.3d at 1102. The district court incorrectly limited the relevant labor market to only those 16 persons qualified for the Masters positions. We have consistently held otherwise in similar cases. For example, a professor who charged his employer with age discrimination for failing to promote him may "subject all of the employer's decisions to statistical analysis to find out whether age makes a difference." Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir. 1996). We did not suggest that the professor's relevant job market is only him. In another case, a former employee of the Illinois Department of Public Health brought a sex discrimination suit against her former employer. See Riordan v. Kempiners, 831 F.2d 690 (7th Cir. 1987). We ruled admissible statistical evidence that showed a systematic wage disparity between male and female employees. See id. at 698. "If it turned out that [defendant] always recommended higher pay for men than women, this would be some evidence that [plaintiff] hadn't gotten the raise she wanted because she was a woman." Id.

Plaintiffs' statistical report looked at all promotions in the upper Midwest region for two positions, including the Masters position at issue in this case. Although the district court and the EPA argue that this report was too broad, our

case law finds this type of labor market appropriate for statistical analysis. See, e.g., Kidd, 167 F.3d at 1101-02 (allowing statistical evidence in an individual disparate treatment case that compared the racial makeup of Illinois State Police cadet classes from 1986 through 1990 with the racial makeup of the subgroup of cadets who were discharged); see also McDonnell-Douglas, 411 U.S. at 804-05 (noting that "statistics as to [the company's] employment policy and practice may be helpful to a determination of whether [the complained of action] conformed to a general pattern of discrimination" and is relevant evidence of pretext).

Plaintiffs' statistical data suggests a general pattern of discrimination toward the foreign born. Although plaintiffs' expert found that blacks received promotions at a lower rate than nonblacks, he did not find that the difference was statistically significant. The expert also found a significant difference when he combined the results of foreign born and black applicants. Plaintiffs argue that this result means that "white employees are favored over both African-American and foreign born employees." Furthermore, plaintiffs contend that "[c]onsidering the two minority groups separately has the effect of understating the magnitude of defendants' discriminatory conduct because defendant gets 'credit' in separate analyses for discriminating against the other protected class." Plaintiffs' "credit" analysis does not make any statistical sense. All it tells us is that either African-Americans or foreign born employees (or both) are promoted less often, statistically speaking. Until we break out the two groups, we cannot examine the possible underlying cause. (It is likely that if plaintiffs' expert combined white and foreign born applicants together, he could show a statistically significant shortfall, but what does that mean?)

While plaintiffs' report is most persuasive in its finding that foreign born employees, who are otherwise qualified, are not promoted as often as native born employees, the evidence that blacks are not promoted as often as nonblacks, even though not statistically significant, is still circumstantial

evidence of possible discrimination. "Different kinds and combinations of evidence can create a triable issue of intentional discrimination." Troupe v. May Dept. Stores, Inc., 20 F.3d 734, 736 (7th Cir. 1994). Evidence of intentional discrimination can include "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which the employer is forbidden to base a difference in treatment received systematically better treatment." Id. (emphasis added). Consequently, the district court should have considered plaintiffs' statistical evidence.

### 3.  Conclusion

Plaintiffs' comparative qualifications and their statistical evidence preclude summary judgment on their Title VII discrimination claims./7 Even if the pieces of evidence were not conclusive by themselves, they sufficiently countered the EPA's assertion that it honestly believed it was promoting the best candidates.

For it is not true that to get over the hurdle of summary judgment a plaintiff must produce the equivalent of an admission of guilt by the defendant. All that is required is evidence from which a rational trier of fact could reasonably infer that the defendant had [failed to promote] the plaintiff because the latter was a member of a protected class . . . .

Troupe, 734 F.3d at 737.  Here, a jury could reasonably find that plaintiffs were more qualified than the selectees. Accordingly, we reverse the district court's grant of summary judgment on plaintiffs' Title VII claims.

### B. Retaliation

Three of the plaintiffs also argue that the district court erred in granting summary judgment to the EPA on their retaliation claims. Plaintiffs Bell, Hill, and Prasinos testified to numerous incidents of alleged retaliation, including demeaning assignments, verbal

abuse, surveillance, diminished responsibilities, refusal to cooperate on job assignments, and placements in situations designed to result in failure.

A prima facie case of retaliation is established when plaintiffs show that (1) they engaged in protected activity; (2) they suffered an adverse employment action subsequent to their participation; and (3) a causal connection exists between the adverse employment action and their participation in protected activity. Smart v. Ball State Univ., 89 F.3d 437, 440 (7th Cir. 1996). The district court concluded that plaintiffs failed to demonstrate a prima facie case of retaliation.

Although we define "adverse employment action" broadly, not everything that makes an employee unhappy is an actionable adverse action. See id. at 441. For an employment action to be actionable, it must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998); accord Ribando v. United Airlines, Inc., 200 F.3d 507, 511 (7th Cir. 1999). Plaintiffs failed to show that they suffered actionable adverse employment action.

Bell asserts that she left her section for a new position with the EPA because of a Panel member's conduct. She did not present any evidence, however, of a material change in the terms or conditions of her employment. Hill also left her section for a new position with the EPA after the Panel did not promote her. Like Bell, Hill did not present any facts that indicated a material change in the terms and conditions of her employment. Prasinos asserts that one of the Panel members refuses to greet her or speak to her and that he cancelled a conference called by her. These are trivial matters that do not rise to the level of actionable retaliation. See Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996); Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994). Accordingly, we affirm the district court's grant of summary judgment to the EPA on the retaliation claims.

III

For the reasons stated herein, we Affirm the district court's grant of summary judgment on plaintiffs' retaliation claims but Reverse the district court's grant of summary judgment on plaintiffs' Title VII claims. Accordingly, we Remand the case for further proceedings consistent with this opinion.

Appendix

| | Tenure | Experience | Job Awards/8 | Rating Score | Rank/9 | Statistical Support |
|---|---|---|---|---|---|---|
| Plaintiffs | | | | | | |
| Bell | 1986;/10 | * region coordinator <br> * F.E. engineering license | 1 gold 2 bronze | 69 | 4 | Minor |
| Hill | 1987 | | 1 bronze | 63 | | Minor |
| Assadi | 1980 | lead engineer | 1 gold 1 bronze | 75 | 1 | Significant |
| Prasinos | 1986 | * lead engineer <br> * region coordinator <br> * project officer | 2 bronze | 75 | | Significant |
| Selectees | | | | | | |
| Dart | 1990 | lead engineer | | 75 | 3 | |
| Kieth | 1991 | | | 69 | 2 | |
| Keegan | 1991 | | | 69 | | |
| Hamsing | 1987 | lead engineer | | 75 | | |

/1 Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. sec. 2000e-2(a)(1).

/2 Although Hill also claimed gender discrimination, she waived the complaint below and does not raise the issue on appeal. Assadi also claimed age discrimination but does not appeal this issue.

/3 This data is summarized in the appendix.

/4 Rule 803 states in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition . . ., but not including a statement of memory or belief to prove the fact remembered or believed . . . .

/5 The EPA never attempted to have the district court rule the memorandum inadmissible; the district court ruled on this issue sua sponte. Furthermore, in its appellate brief, the EPA does not attempt to support the district court's ruling; instead, it attempts to minimize the memorandum's impact.

/6 The data indicated that 20 African-Americans received promotions during this time period, but that the applicant flow would have expected 25. During this same time period, 19 foreign-born employees received promotions, while the applicant flow would have expected 34.

/7 This evidence is summarized in the appendix.

/8 One unidentified selectee received two medals and the other selectees received no medals.

/9 This is testimony given by one of the panel members, Peter Spyropoulos, of the way that he ranked the applicants. In other testimony he had Bell ranked as high as "2".

/10 Bell worked for Dow Chemical as an engineer between 1988 and 1991.


    MANION, Circuit Judge, concurring.  I agree with the court that for the claims of the three plaintiffs alleging retaliation, summary judgment should be granted in favor of the defendant. I also agree that at this stage, at least, summary judgment on the plaintiffs' claims for discrimination for failure to promote is not appropriate. Statistical evidence is a valid consideration in determining whether there were any discriminatory practices in the promotion procedure and decision. But I emphasize that statistical evidence alone cannot and should not carry the day. See Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343 (7th Cir. 1997). I further note that, in addition to the comparative qualifications such as test scores, experience and achievement awards as summarized on the document attached to this opinion, there are other subjective factors. As long as there is no unlawful discriminatory intent, such personnel decisions should be left to the employer. Likewise, the plaintiffs have unique distinctions

among themselves regarding their qualifications. If a jury is to decide whether one or more plaintiffs should have been promoted instead of one or more of those who received the promotions, the jury's decision must be confined to a conclusion that race or national origin was or was not a determining factor in the failure to promote and must not be because the jury's own subjective analysis would deem one or another of the plaintiffs more qualified for the job.