In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3306

Antonio Guerrero,

Plaintiff-Appellant,

v.

John Ashcroft,/1 Attorney General
of the United States,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 864--Rebecca R. Pallmeyer, Judge.

Argued February 15, 2001--Decided June 13, 2001

   Before Bauer,  Kanne,/2 and Rovner,
Circuit Judges.

   Bauer, Circuit Judge.  Antonio Guerrero,
an Hispanic FBI agent, sued the Attorney
General under Title VII for disparate
treatment based on race and national
origin. The district court granted
summary judgment for the Attorney
General, finding that Guerrero failed to
create a factual issue regarding the
FBI's business reasons for declining to
promote him. We affirm the district
court.

I.  Background

   Guerrero applied for a promotion to a
GS-14 level supervisor of one of the
FBI's Organized Crime Squads ("OC-3
Squad") in the Chicago division in 1997.
The twenty-person squad investigates non-
traditional organized crime. The FBI
posted the job opening which stated in
relevant part:

Candidate selected will be expected to
maintain effective liaison with a large
number of local, state and federal law
enforcement agencies. As Squad OC-3 is
touted as the repository for intelligence
regarding international criminal
enterprises, effective liaison is
critical. Selectee will be expected to

continue the employment of sophisticated investigatory techniques such as consensual monitoring, Title III's, UCO's, and proactive investigative strategies to combat significant crime problems. Due to the burgeoning problem in Chicago of Nigerian heroin trafficking organizations, candidates should be well versed in drug investigations; be fully experienced in the CIP; have proven track record of developing major cases using a proactive and task force approach. Emphasis will be placed on strong leadership, interpersonal and administrative skills. . . . (Candidates must have at least 3 years FBI investigatory experience . . . and relief supervisory (preferably principal relief) experience.

Four agents applied for the OC-3 job: Guerrero, Gabe Casanova, an Hispanic agent, Thomas Bourgeois, a white agent, and William Wong, an Asian agent.

The FBI was fortunate to have four highly qualified applicants. Guerrero served as a police officer for seven years and as an agent in the FBI for twelve years before applying for the OC-3 promotion. During his FBI tenure, Guerrero built a record of exceptional performance and received numerous awards. From 1984 to 1988, Guerrero conducted drug investigations and performed other related duties for the FBI's El Paso, Texas division. In 1998, Guerrero transferred to the Chicago division, where he worked in the Mexican Drug Traffickers Squad. Guerrero accepted a promotion to the Squad's relief supervisor and also assisted with investigations into Asian drug trafficking. Two years later, in 1990, Guerrero transferred to the Drug Intelligence Squad where he continued to serve as a relief supervisor and was promoted to principal relief supervisor. Guerrero coordinated joint investigations with the DEA. He then transferred to the Organized Crime Drug Enforcement Task Force where he: acted as the principle relief supervisor; recruited and debriefed informants; acted as an undercover agent; conducted interviews, arrests and surveillance; engaged in controlled buys; and executed search warrants. Further, he acted as the informant coordinator, a job he accepted because his supervisor told him it could

lead to a promotion. In 1994, Guerrero became the team leader and relief supervisor of the Forfeiture Team. In 1995, Guerrero assumed the duty of coordinating the Chicago Law Enforcement Intelligence Center, chairing twice-weekly meetings among 15 agencies for the exchange of intelligence information.

The Chicago division was sufficiently impressed with Guerrero's performance in the Forfeiture Team that it asked him to head all the division's forfeitures, which required supervising paralegals, but no agents. After assurances from his supervisors that the transfer would not hurt his changes of being promoted to a GS-14 level position, Guerrero accepted. He excelled in the position. His program became the model for others in the Chicago division and Guerrero himself was tapped to train program coordinators around the country. Guerrero was working as Forfeiture Coordinator when he applied for the OC-3 position.

Casanova was the acting supervisor with the Intelligence Squad. Between 1981 and 1986, he worked on drug investigations in Chicago. Bourgeois's experience since 1986 was concentrated in traditional organized crime and corruption investigations. He also developed some operational techniques, served as lead agent on major cases, and acted as the principal relief for his squad. Wong had worked in the OC-3 Squad since 1986, and was the principle relief supervisor in 1997. He had experience dealing with complex cases.

In selecting the candidate to promote, the FBI followed highly structured procedures. The Career Board solicited r sum s from and conducted interviews with each of the applicants, asking all applicants the same questions. Using a matrix form, the Board evaluated the candidates by rating their experience in the skill areas the OC-3 position required. The skill ratings were, in order of descending value, "outstanding," "excellent," "superior," and "limited." The Career Board rated as "limited" Guerrero's experience with drug investigation, sophisticated investigatory techniques, and leadership skills, as well as his overall accomplishments with the FBI. It rated his liaison experience as "excellent," an

area in which he shared the highest score with Bourgeois. The Career Board also provided a narrative explanation of each candidate's ratings. Overall, the Career Board ranked Bourgeois first, Wong second, and Casanova third. Explaining its ranking of Guerrero, members of the Career Board recognized his good performance, but stated that Guerrero's experience was administrative rather than investigative or operational. Further, they believed that Guerrero had overstated his success in the forfeiture program because his increase in collections was partially due to developments in the law. The Special Agent in Charge ("SAC") of the Chicago office considered the Career Board's recommendation and decided to recommend agent Wong. The SAC did not comment on Guerrero's skills, but explained that he recommended Wong for the job because Wong already worked on the OC-3 squad and the SAC wanted to reward Wong's good work. Given the SAC's choice, the Career Board decided to swap its first and second choices, recommending Wong as its top pick and moving Bourgeois to second. These recommendations went to the national Special Agent Mid-Level Management Selection Board ("SAMMS Board") which decides who to promote, relying heavily on the recommendations of the Career Board and SAC. In this case, the SAMMS Board promoted Wong.

Believing himself to be the victim of discrimination, Guerrero completed the required procedures with the EEOC and sued the FBI for declining to promote him based on his race and national origin in violation of Title VII. He hired an expert whose statistical analysis tended to show that the FBI discriminated against Hispanic and Black officers when it decided who to promote to GS-14 level positions in the Chicago office.

The FBI moved for summary judgment, admitting that Guerrero established a prima facie case of discrimination, but arguing that it had nondiscriminatory reasons declining to promote Guerrero. Guerrero argued that the proffered reasons constituted pretext. The district court held that Guerrero established a prima facie case and that the FBI countered with legitimate business reasons for declining to promote him. The court then granted summary judgment in

favor of the FBI on the grounds that Guerrero failed to raise a genuine issue of fact regarding the FBI's proffered reasons for its decision.

## II. Discussion

We review the district court's grant of summary judgment de novo and draw all reasonable inferences in favor of Guerrero, the non-moving party. See Bell v. E.P.A., 232 F.3d 546, 549 (7th Cir. 2000). We will affirm the grant of summary judgment only if there is no genuine issue as to any material fact and if the moving party, the Attorney General, is entitled to judgment as a matter of law. See id. Guerrero has appropriately proceeded under the McDonnell-Douglas burden shifting test. Because we believe that Guerrero proved his prima facie case, see Brill v. Lante Corp., 119 F.3d 1266, 1270 (7th Cir. 1997) (discussing prima facie elements in a failure to promote context), we focus on the second and third steps of the test: whether the FBI has proffered legitimate business reasons for its decision, and whether Guerrero has marshaled evidence that could lead a reasonable trier of fact to reject those reasons as pretextual. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2108-09 (2000); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973).

### A. Guerrero's Evaluations

The FBI asserts six business reasons explaining why it opted not to promote Guerrero: (1) the OC-3 position prioritized "street" skills above administrative skills like those Guerrero possessed; (2) Guerrero lacked pertinent leadership experience; (3) Guerrero lacked recent drug investigation experience; (4) Guerrero lacked recent relief supervisor experience; (5) Guerrero lacked recent experience withsophisticated investigatory techniques; and (6) Guerrero overstated his success in the forfeitures program. Guerrero discounts these reasons as pretext. To prevail, Guerrero must raise triable issues of fact as to all six rationales because the FBI needs but one legitimate reason for its decision not to promote Guerrero. See Mills v. Health Care Serv. Corp., 171 F.3d 450, 459 (7th

Cir. 1999).

Creating a triable pretext issue with indirect evidence is a difficult task which may be accomplished in one of two ways. The plaintiff must show either that the employer lied about why it opted not to promote him, see Reeves, 120 S. Ct. at 2108-09, or that the employer's reasons have no basis in fact. See Velasco v. Illinois Dep't of Human Services, 246 F.3d 1010, 1017 (7th Cir. 2001); Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000) (citations omitted). Guerrero wisely uses both available options. Guerrero's arguments boil down to two theories: (1) that the FBI lied about its reasons because after seeking applicants with administrative experience, it conveniently emphasized the operational nature of the OC-3 position when evaluating the candidates; and (2) that the Career Board's egregious mischaracterization of Guerrero's operational experience both lacks a basis in fact and evidences that even the FBI could not have believed its own evaluation.

There is a fundamental disagreement between Guerrero and the FBI regarding whether the OC-3 position emphasized administrative or operational skills. Quoting the job description, Guerrero argues that administrative skills were paramount, while the FBI argues operational skills were more important. Reviewing the job description in the light most favorable to Guerrero, it is clear that the job demanded both administrative and operational skills. That the FBI eventually based its promotion decision on the candidates' operational skills, specifically those listed in the job description, is legitimate. Further, we cannot conclude that the Career Board and SAC did not take the candidates' administrative skills into account. A reasonable trier of fact could not find pretext based on the FBI's operational focus.

Guerrero next contends that the Career Board mischaracterized his operational experience so egregiously, especially in comparison to its evaluation of the other candidates, that it is impossible for the its evaluation to be based in fact or for the Career Board or SAC to sincerely believe it. Specifically, Guerrero

challenges as pretextual the Career Board's conclusion that his drug investigation experience, leadership skills, sophisticated investigatory techniques and relief supervisory experience was "limited." As we examine Guerrero's evaluation, we are mindful that we are not a super-personnel board, see Bell, 232 F.3d at 550, and that we may not punish an employer for choices that constitute business decisions alone, no matter how unwise or mistaken they may seem to us. See Reeves, 120 S. Ct. at 2108-09; Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 (7th Cir. 2000); Jordan, 205 F.3d at 343. Rather, Guerrero must provide some evidence that the FBI's rationale for declining to promote him is a sham or is not based in fact.

The Career Board made its recommendation based on application files and interviews. During its evaluations, the FBI placed great emphasis on the recency of the candidates' skills experience. Guerrero applied for the OC-3 promotion from the mainly administrative position of Forfeiture Coordinator, which made some of his operational skills dated. Guerrero's leadership experience in this position was mainly administrative, consisting primarily of coordinating office workers rather than agents and coordinating communications between agencies rather than directing investigatory agents. In the forfeiture position, Guerrero did not conduct drug investigations, engage in sophisticated investigatory techniques, or serve as a relief supervisor. In contrast, higher-rated agents Wong and Bourgeois held operational positions in which they used investigatory skills.

Guerrero argues that pretext becomes evident when one compares his skill ratings to those of other agents. Guerrero contends that he had comparable, and in some areas, notably drug investigation, more extensive and recent experience than other agents, yet was rated lower. In the drug investigation area, Wong and Casanova had more recent experience than Guerrero and received a better rating. Guerrero points out that Bourgeios's drug investigation experience was the most dated, yet Bourgeois received a higher rating than Guerrero. The Career Board stated in its

explanation of the ratings that it believed some of Bourgeois's experience investigating organized crime was pertinent to his drug investigatory skills, and took account of it accordingly. We cannot second-guess the appropriateness of this business judgment. Similarly, the Career Board explained its ratings for the other skills categories and we find no evidence of pretext in them.

The FBI also claims that it opted not to promote Guerrero because he overstated his success in the Forfeiture Coordinator position. Immediately prior to Guerrero's appointment as Forfeiture Coordinator, the FBI was prohibited by law from engaging in forfeiture procedures. The Supreme Court made the forfeitures available in 1996, shortly before Guerrero assumed the position of Forfeiture Coordinator. Some Career Board members believed that due to these circumstances, Guerrero exaggerated his role in boosting the FBI's forfeiture collections. As before, Guerrero does not create an issue of fact regarding whether this perception was based in fact or whether the Career Board members truly believed it.

Guerrero also contends that the SAC's recommendations were suspect and can constitute evidence of pretext. The SAC decided to recommend Wong because Wong was then the relief supervisor for the OC-3 squad. Guerrero notes that neither he nor Casanova received such a preference when they applied to be promoted within the squads they served as relief supervisors. The FBI never guaranteed any the promotion of any relief supervisor. Given that this attribute is among many the FBI evaluated, it is not surprising that it could genuinely be dispositive in some cases, but not in others. Further, no evidence tends to show that the SAC is lying about his motivation for recommending Wong rather than Guerrero. Because we find no issue as to pretext, we cannot accept Guerrero's invitation to levy Title VII liability.


B.  Pattern and Practice of Discrimination

To bolster his pretext argument,

Guerrero argues that the Career Board and SAC have engaged in a pattern of discrimination against Hispanic agents. Guerrero first presents anecdotal evidence, pointing to two general patterns which he believes evidence discrimination. First, he notes that Hispanics are frequently appointed to drug squads, yet rarely promoted to supervisory roles in those squads. We find this fact, without more explanation, to be inapposite. There are many reasons why this pattern could have evolved, some innocent. For example, few Hispanic agents may have applied for these positions. Second, Guerrero argues that he neither he nor Casanova have been able to use relief supervisor positions as stepping stones to promotion whereas three white agents have. This sparse evidence hardly constitutes a trend: it is merely the experience of Guerrero and one other Hispanic agent. Again, we do not have enough information to assess this trend. Further, we have no evidence that the FBI touted relief supervisorypositions as stepping stones to promotion. Guerrero's pattern and practice evidence does not support his claim.

Guerrero next offers statistical studies conducted by an expert, Dr. LaLonde, tending to show that Hispanic and Black agents are promoted far less frequently than other agents. We have found statistical evidence to be admissible and helpful in disparate treatment cases, yet statistical evidence alone does not, in most cases prove pretext. See Rummery v. Illinois Bell Telephone Co., Slip Op. 00-2137 at *11 (7th Cir. May 11, 2001); Adams v. Ameritech Services, Inc., 231 F.3d 414, 423 (7th Cir. 2000). We recognize that there is a fierce disagreement between the parties regarding the appropriateness of Dr. LaLonde's data selection and his methodological technique, but like the district court, we will not address it. Even if we conclude that Guerrero's statistics evidence discrimination, we decline to reverse the grant of summary judgment on this basis. The sample Guerrero provides is quite small, focusing on only four individuals over a span of eight years. This meager statistical evidence does not constitute the rare case where statistics alone can create a triable issue of pretext and

Guerrero has not produced any evidence of pretext to supplement his statistics.

The FBI's proffered reasons for declining to promote Guerrero are legitimate and we see no triable issue of pretext. We AFFIRM.

FOOTNOTES

/1 Pursuant to Fed. R. App. P. 43(c)(2), John Ashcroft is automatically substituted for the original defendant, Janet Reno.

/2 Circuit Judge Kanne replaced Chief Judge Flaum who recused himself subsequent to oral argument.