# In the

# United States Court of Appeals

## For the Seventh Circuit

—————————

No. 04-4026

RUBEN CARDOSO,

*Plaintiff-Appellant,*

*v.*

ROBERT BOSCH CORPORATION,

*Defendant-Appellee.*

—————————

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 03 C 468—**Allen Sharp**, *Judge.*

—————————

ARGUED JUNE 7, 2005—DECIDED OCTOBER 14, 2005

—————————

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Ruben Cardoso, a Brazilian national and employee of Robert Bosch Corporation, was distressed to learn that he was being paid less than fellow employees in the purchasing department of Bosch's South Bend, Indiana, facility. Cardoso was even more distressed when his supervisor opined that the disparity was due to Cardoso's national origin. Brazilian he may be, but Cardoso's reaction was quintessentially American—he sued

Bosch in federal court, alleging wage discrimination on the basis of his national origin in violation of Title VII. The district court granted summary judgment in Bosch's favor, and Cardoso appeals. Cardoso's case fares no better here. We affirm.

## I.  Background

In 1995, Bosch's Brazilian subsidiary hired Cardoso to work as an import coordinator in its purchasing group. In 1997, Bosch transferred Cardoso to the South Bend facility's purchasing department for a two-year training assignment. During this time, he remained an employee of the Brazilian subsidiary and continued to earn his Brazilian salary (equivalent to $32,500) plus a $20,000 stipend, which was set to expire upon completion of his assignment in the U.S.

At the end of his two-year assignment, Cardoso requested a permanent transfer to Bosch U.S. Bosch granted Cardoso's request, and Cardoso accepted a position as a buyer in its South Bend facility in November 1999. Bosch's human resources department determined Cardoso's annual salary for this position to be $54,900, based on the company's standard practice of comparing an incoming employee's experience and skills with the skills, experience, and salaries of current employees in the same position.

At the time of Cardoso's hire, there were three other buyers in the purchasing department. The purchasing department also employed senior buyers. Although the senior buyers performed duties similar to those of the buyers, senior buyers had more responsibility, discretion, and autonomy. For example, a buyer could do market research and make purchasing recommendations to a manager, whereas a senior buyer had authority to make the final purchasing decisions on his own. Accordingly, senior buyers were in a higher salary grade than buyers.

When Cardoso started his full-time position, there was one senior buyer in the department. Some time thereafter, Bosch posted on its company intranet listings for two senior buyer vacancies. It is undisputed that Cardoso did not apply for either of these positions. In late 2000 and early 2001, Bosch filled the positions with two applicants from outside the company.

Shortly thereafter, Jim Turza, one of Cardoso's fellow buyers, told Cardoso that Bosch had just hired people into the purchasing department at higher salaries than either of them were making. Turza was upset about this turn of events, which he perceived to be unfair. Turza emailed Frank Gaba, the director of purchasing and the buyers' supervisor, to complain about the situation and to demand to be reclassified as a senior buyer with a correspondingly higher salary. Gaba denied Turza's request.

Cardoso was so emotionally distraught at hearing the news that he took a few days off from work. In April 2001, Cardoso confronted Gaba about the matter. According to Cardoso, Gaba theorized that Cardoso had been hired at a lower salary than other buyers, explaining, "[B]ecause you're Brazilian . . .[,] [Human Resources] think[s] that if you were in Brazil, you would not be making as much money as you are already making here."

A week later, Gaba called Cardoso to his office. As Cardoso recalls it, Gaba informed him that he had spoken with Edmund Buehl, one of Bosch's North American vice presidents, and convinced Buehl to "adjust [Cardoso's] salary to the level of the other ones." Gaba assured Cardoso that the salary adjustment would take place within two months. Seven months passed, and Cardoso's salary remained the same. He confronted Gaba in November 2001. Gaba denied Cardoso's recollections of the earlier conversation.

In January 2002, Cardoso filed a charge with the Equal Employment Opportunity Commission (EEOC), and then,

after receiving a right-to-sue letter, filed a complaint in federal court, alleging that Bosch discriminated against him on the basis of his national origin. Although the precise nature of Cardoso's complaint was less than clear, the district court interpreted the complaint as alleging that Bosch discriminated by denying him a promotion to senior buyer and that the failure to promote resulted in a pay disparity. The district court granted summary judgment in Bosch's favor, finding that his complaint was time- barred because the acts complained of took place outside the 300-day filing period. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122-23 (2002); *Dasgupta v. Univ. of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1140 (7th Cir. 1997).

## II.  Discussion

Our review of the grant of summary judgment is *de novo. See Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 782 (7th Cir. 2004). We construe all facts and inferences in the light most favorable to the nonmoving party, Cardoso. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate when the record as a whole indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). We may affirm summary judgment on any ground supported in the record, so long as that ground was adequately addressed in the district court and the nonmoving party had an opportunity to contest the issue. *See, e.g.*, *Box v. A&P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir. 1985) (collecting authority).

Generously construed, Cardoso's allegations boil down to just one claim: disparate pay on account of his Brazilian

national origin.[1] The parties vigorously dispute whether, as the district court concluded, Cardoso's disparate pay claims are time-barred. In essence, the parties disagree over what event started the clock on Cardoso's 300-day window to file an EEOC charge. *E.g.*, *Morgan*, 536 U.S. at 122-23. Cardoso argues that our decision in *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007 (7th Cir. 2003), controls and requires that we reverse the district court's judgment. Bosch responds that the district court properly applied *Dasgupta* to find that Cardoso's claims were time-barred, and in any event, Cardoso's claims are also time-barred under *Reese*.

We shall cut right to the chase, however. Even if Cardoso's claims are not time-barred, Cardoso's case does not succeed on the merits—which were well ventilated both in the district court and here—and thus summary judgment was properly granted in Bosch's favor.

Cardoso's claims arise under Title VII of the Civil Rights Act of 1964, which makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII plaintiffs may offer either direct or indirect proof of discrimination using the venerable burden-shifting method in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Cardoso proceeds under both methods, and we turn first to Cardoso's direct evidence.

Direct evidence is essentially an "outright admission" that a challenged action was undertaken for one of the forbidden reasons covered in Title VII. *See Davis*, 368 F.3d at 783; *see also Jordan v. City of Gary*, 396 F.3d 825, 832 (7th Cir.

---

[1] As the district court intimated, Cardoso appears to lump together a failure to promote claim with a disparate pay claim, but gives the former only the barest mention (and no supporting argument) in his briefs. We address this issue below.

2005). Cardoso claims that Gaba's explanation (given some seventeen months after Cardoso's hire) for Cardoso's lower salary—"[B]ecause you're Brazilian"—is the smoking gun that directly proves rampant anti-Brazilianism at Bosch. Cardoso is wrong. It is undisputed that Gaba did not make the decision to hire Cardoso or to set his salary at a particular level, nor did he even have input into these decisions. Although Gaba was Cardoso's supervisor in the purchasing department, the hiring and salary decisions were made by Edmund Buehl and persons in Bosch's human resources department. Because Gaba was not the decisionmaker in question, his statement will not suffice as direct evidence of discrimination on Bosch's account. *See Davis*, 368 F.3d at 783 ("A decisionmaker is the person responsible for the contested decision.") (citation omitted); *see also Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612-13 (7th Cir. 2005) (concluding that a nondecisionmaker's comment that plaintiff "would probably be losing [his] job because [he] was a stupid Polack" was unrelated to plaintiff's termination); *Swanson v. Leggett & Platt, Inc.*, 154 F.3d 730, 733 (7th Cir. 1998) (in ADEA case, nondecisionmaker's comment that age was a factor in termination was not an admission of discrimination).

Moreover, Cardoso's argument that Gaba was somehow "involved" in the process does not carry the day. Cardoso in particular focuses on what he claims was Gaba's "admission" that he convinced Buehl to adjust Cardoso's salary upward. Gaba and Bosch deny this contention, but even if we assume that Gaba interceded on Cardoso's behalf and later denied it when the expected raise did not come through, this is far from *direct* evidence of discrimination. At most, it is direct evidence that Buehl reneged, but does not say anything about the reasons why. Cardoso's bare speculation will not suffice to make up the difference, particularly when (as discussed below) Bosch has offered plenty of direct evidence that no discrimination was afoot.

*See, e.g., Swanson*, 154 F.3d at 733 (noting that a plaintiff's speculation about a "plausible scenario" is insufficient to counter direct evidence offered in support of summary judgment) (citations omitted). Nor do Gaba's statements amount to a "mosaic" of circumstantial evidence that might directly prove discrimination. *Cf. Jordan*, 396 F.3d at 832-33; *Davis*, 368 F.3d at 784.

Cardoso's indirect evidence fares no better. Under the *McDonnell Douglas* framework, Cardoso must first establish a *prima facie* case of discrimination. *See Ghosh v. Indiana Dep't of Envtl. Mgt.*, 192 F.3d 1087, 1090 (7th Cir. 1999). It is somewhat unclear what standard guides the determination of a *prima facie* case of disparate pay under Title VII. *See id.* at 1094 (citation omitted). We shall assume Cardoso meets this standard and proceed to an analysis of Bosch's explanations for the difference in pay and whether those explanations are merely pretextual. *See id.* at 1091 (citation omitted).

Before addressing Bosch's explanations, it is worth repeating the gravamen of Cardoso's dispute with Bosch. Cardoso claims that he was more qualified than his fellow buyers, yet he started at a lower salary than they did and did not receive a comparable raise. Cardoso also sweeps in the senior buyers as comparators, claiming that his responsibilities were at least as weighty as theirs, and the fact that they were being paid more than he is evidence of discrimination. As Cardoso sees it,

> [t]he hiring as a senior buyer or promotion to such position in itself was part of the discriminatory conduct leading to a discriminatory wage differential. In other words Bosch cannot hide a discriminatory salary by stating that someone is a senior buyer and by [sic] thus by definition has greater responsibilities and is given a higher salary than the position of buyer Cardoso occupied.

In sum, Cardoso claims that he was better qualified than the buyers and senior buyers, and his lower salary can only be explained by his Brazilian national origin and Bosch's discrimination against him on that basis.

We first examine the salaries and qualifications of Cardoso's fellow buyers. In 1999, when Cardoso was hired, Vishal Goyal, from India, was earning $56,600 and had an MBA and seven years' experience prior to starting at Bosch in June 1998. Lela Chai, a Chinese-American, was earning $52,000 and had both an MBA and an electrical engineering master's degree. Chai had six years' experience prior to joining Bosch in January 1999. Finally, Jim Turza, a Caucasian American, was making $54,200, had a bachelor's degree in business and seven years' experience as a buyer prior to joining Bosch in January 1996. In 2000, Goyal's pay was increased to $62,700; Chai's pay increased to $59,400, and Turza's pay increased to $56,100.

Cardoso had a bachelor's in business administration and three years' experience prior to joining Bosch's Brazilian subsidiary in 1995. Cardoso's starting salary of $54,900 remained the same in 2000 because he was hired at the end of 1999, in November. Cardoso received a raise, effective January 1, 2001, to $57,600.

Bosch offered legitimate nondiscriminatory reasons for the supposed disparate pay of which Cardoso complains. Bosch offered evidence that it makes starting salary offers and pay raises based on a number of objective factors, including the incoming employee's skills, experience, education, and work performance. These proffered reasons are perfectly consistent with the evidence regarding the starting salaries and raises of Cardoso and his fellow buyers. All of the buyers' starting salaries comport with the stated criteria. The two higher paid buyers in 2000—Goyal and Chai—both had master's degrees and more work experience than Cardoso prior to joining Bosch. Cardoso

and Turza, both with bachelor's degrees, earned the least. Interestingly, Chai started at an even lower salary than Cardoso did, but received a larger raise in 2000 than Cardoso did in 2001. Again, these figures are consistent with Bosch's contention that Chai's higher level of education and greater work experience explained the differing salary levels that resulted a year after each employee's hire.

With respect to the senior buyers that Cardoso casts as comparators, it is very difficult to take Cardoso's arguments seriously. In essence, Cardoso contends that Bosch hired senior buyers that were less qualified than he and tried to hide its discrimination against Cardoso by labeling the new hires as "senior" buyers instead of buyers.

But it is undisputed that "senior buyer" is an actual position in Bosch's purchasing department—indeed, a senior buyer was already in place at the time Cardoso was hired—and it is further undisputed that the position has greater authority and autonomy than a buyer has. Bosch provided evidence that all of its senior buyers had qualifications justifying their hire in the first place, such as work experience or education. For example, Bosch showed that the two senior buyers hired in 2000 and 2001 had substantial prior experience—thirteen years and eleven years, respectively. One of the buyers had an MBA, while the other had extensive experience with Allied Signal, which previously operated Bosch's South Bend facility. The senior buyer with the MBA started at $75,000, while the other started at $60,000.

Cardoso must offer evidence that these facially neutral explanations for pay disparities are pretextual. But Cardoso offers nothing more than his own unsupported speculation for his peculiar conclusion that Bosch contrived to label these two hires as "senior buyers" in order to justify paying them more than it paid Cardoso. Cardoso claims that Bosch's facially nondiscriminatory explanations for the pay

disparities must be pretextual because, for example, Gaba once told Cardoso that an MBA was not necessary for a promotion and allegedly discouraged Cardoso from pursuing such a degree. In the first place, Gaba's statement appears factually accurate because one of the recently hired senior buyers did not have an MBA. Second, and most important, the statement does not, by itself, illustrate that Bosch discriminated on the basis of Cardoso's national origin.

The rest of Cardoso's evidence of pretext is simply a recitation of how he was more qualified than his fellow buyers and the senior buyers yet received a smaller pay-check. This "evidence" comes from Cardoso's own declaration, in which he unqualifiedly asserts that: (1) he was "performing the duties of at least a senior buyer"; (2) he "alone possessed the key language skills in both Portuguese and Spanish, which were crucial to the Bosch division he worked in"; (3) his knowledge of the Brazilian culture was vital to the company and nobody else had such knowledge; and (4) that he "was at least as qualified by experience, training, responsibilities, reporting status, and skills" as every one of the buyers and senior buyers to which he compared himself.

None of this "evidence" establishes that Bosch's explanations were pretextual. As an initial matter, we note that much of the substance of Cardoso's declaration—particularly his expansive description of his job responsibilities—directly contradicts his earlier deposition testimony, in which he admitted having far less authority and no independence with regard to managing commodities. *Cf., e.g.*, *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996). But even if Cardoso's glowing description of his capabilities and responsibilities is undisputed, it still tells us nothing about whether Bosch's proffered explanations were pretextual. A pretext for discrimination is something worse than a business error—a lie or deceit designed to cover one's tracks. *See Davis*, 368

F.3d at 784 ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.") (citation omitted); *Ghosh*, 192 F.3d at 1091 ("Pretext is established if the plaintiff can show that the defendant's proffered reasons are either lies or completely lacking in factual basis.") (citation omitted). Rather than offering evidence that Bosch is lying about its reasons for the alleged disparate pay, Cardoso only presents a list of reasons why he thinks Bosch failed to recognize his true worth and compensate him accordingly.

Perhaps Cardoso's many self-described talents *were* objectively more valuable to Bosch, and he was underpaid because the company was exercising poor business judgment in not recognizing that fact and paying him accordingly. That determination, however, is not for us to make, and we will not second-guess Bosch's management decisions so long as they do not run afoul of Title VII. As we have often stated—to a host of deaf ears, it often seems—the court is not a "super-personnel department" intervening whenever an employee feels he is being treated unjustly. *See Davis*, 368 F.3d at 785 (citation omitted); *Guerrero v. Ashcroft*, 253 F.3d 309, 314 (7th Cir. 2001) (citation omitted). The aggrieved employee may seek recourse in federal court for discrimination only for the forbidden reasons set forth in Title VII, not for common workplace disputes or poor, nonsensical, or even heavy-handed management techniques or decisions. *See, e.g.*, *Guerrero*, 253 F.3d at 314 ("[W]e may not punish an employer for choices that constitute business decisions alone, no matter how unwise or mistaken they may seem to us.") (collecting authority). Nor does Title VII empower us to impose court-enforced merit selection or recognition programs. *Cf. Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir. 2000).

Cardoso's evidence of pretext is nothing more than his disagreement with the way in which Bosch evaluated his

skills, qualifications, and worth in comparison to the other buyers and senior buyers. This will not do. Cardoso's belief that he is better qualified for a higher salary is irrelevant to the question of pretext. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996). In short, Cardoso has not produced any evidence indicating that Bosch's facially legitimate explanations are pretextual, and thus no reasonable jury could find that Bosch discriminated against him because he is Brazilian.

One final loose end: as mentioned earlier, Cardoso may also be arguing a freestanding failure-to-promote claim because he was not promoted to one of the two listed senior buyer positions in 2000 or 2001. There was some confusion on this in the district court, for Cardoso alleged both that the failure to promote him to senior buyer and the hiring of senior buyers over him were factors that supported his wage discrimination claim. Nevertheless, even if Cardoso is alleging such a claim, he fails even to make it past the *prima facie* stage, for it is undisputed that he did not apply for those job openings (which were advertised) and therefore could not have been rejected for promotion to either opening. *See Ghosh*, 192 F.3d at 1090-91. In addition, he offers no evidence—other than his unsupported self-promotion as described above—that he was better qualified for those positions than the persons hired. *See id.* at 1091.

### III.  Conclusion

For the reasons given, we AFFIRM the judgment of the district court.

A true Copy:
  Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*