UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 28, 2006
Decided March 23, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 04-2156

EDWARD E. FRENCH, SR.,
       *Plaintiff-Appellant,*

    *v.*

ALPHA STEEL CORPORATION,
       *Defendant-Appellee.*

Appeal from the United States
District Court for the
Northern District of Indiana,
Hammond Division.

No. 2:02 CV 315 PS

**Philip P. Simon**, *Judge.*

## O R D E R

Edward French sued his former employer, Alpha Steel Corporation, under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, claiming that the company had discriminated against him on the basis of race. He alleged that this occurred when Alpha denied his request for a leave of absence, accepted his apparent resignation, and later refused his attempt to rescind this resignation. He also alleged that his manager called him a derogatory name. The district court granted summary judgment for Alpha. It concluded that the circumstantial evidence of direct discrimination that French offered was insufficient to raise a genuine issue of fact that would entitle him to go to trial. It also found that French waived his claim under the

indirect method of proving discrimination, and added for good measure that he failed to point to evidence that would permit a trier of fact to find either an adverse employment action or more favorable treatment of similarly situated coworkers outside the protected class. French appeals, and we affirm.

## I

French, who is African-American, began unloading trucks for Alpha in 1998; later, he was promoted first to saw operator and then group leader. In late 2001 he decided that he wanted to attend classes at a local vocational college to obtain a real estate appraiser's license. French asked his union steward, Joel Komyatte, to request a 14-week leave of absence on his behalf so that he could pursue this interest. Komyatte did so, but David Panozzo, the plant manager, denied the request. On December 10, 2001, French submitted a letter to Panozzo and to his foreman, Fred Pezel, inquiring about the possibility of future layoffs, discussing his desire to further his education, and expressing his unhappiness in his current position. Because that letter features so prominently in French's case, we reproduce it in full here, exactly as he wrote it:

> Dear Dave Panozzo and staff. Today is Monday 12-10-01. I Edward E. French, Sr., I am discussing the possibility of upgrading my future.
>
> I worked here at Alpha and seems like the company is going through ups and down. So my conclusion came down to Edward needs to go back to school to better my future, and my familys future. So if it is a opportunity to upgrade myself why not at this time. The economy is down also, so I know things aren't looking good, so I asking if there is gonna be a laid off cut.
>
> I would rather go back to school to upgrade my education for the long haul.
>
> My class starts Jan 14 2002 for 14 weeks so, I need plenty of concentration to achieve my goals in life to be a sucessful business owner. I'm just not happy here no more, I had things happen to me that I really cant sometimes understand why things happen, but they do happen anyway.
>
> So I just come to try to do my best job.
>
> Thank you.
>
> Mr. Edward E. French, Sr.

French met with Panozzo, Komyatte, and Pezel to discuss the letter. The latter two testified that French explicitly stated that his intent was to resign. French takes issue with that account. It is undisputed, however, that after the managers received this

letter, they posted a job bid for French's group leader position and they awarded it to another employee prior to January 11, 2002.

French seemed to acknowledge that he had resigned (or at a minimum that the company may have thought that he had resigned) when he submitted another letter to Panozzo in January 2002, stating that he was "writing to remove my letter of resination [sic], that I submitted to you, and I will [sic] like to still be an Employee at Alpha Steel Corp." Because Alpha had already filled French's position, however, it chose not to accept the attempted rescission. French met with Panozzo and several union leaders shortly before his last day of work to discuss the possibility that French was engaging in a work slowdown or that he was encouraging other union employees to strike. According to French, the meeting ended when Panozzo became upset and said "get this nigger out of my office." Although none of the other attendees at the meeting corroborated French's claim, we accept French's version for purposes of our review of the summary judgment.

The district court granted Alpha's motion for summary judgment. It concluded that French failed to prove intentional discrimination under the direct method because he offered no smoking-gun evidence that any decision Alpha took was based on his race, and the only circumstantial evidence he offered, such as Panozzo's racial slur, was unrelated to French's resignation or French's attempt to rescind the resignation. The district court also found no "telling temporal sequence" that would permit a trier of fact to find a causal link between the alleged racial slur and French's departure from Alpha. Next the district court found that French could not rely on the indirect method of proving discrimination, because he "made only a passing reference to the indirect method in his opposition to summary judgment." The court therefore concluded that he had waived (or more properly, forfeited) such a claim. In any event, the court observed, French could not proceed under the indirect method. The court noted that because French resigned, he could not show that he suffered an adverse employment action. Finally, the court stated that even if French could establish a *prima facie* case of discrimination, he could not show that Alpha's stated reason for terminating him—that his position had been filled in response to his own resignation request one month earlier—was pretextual.

## II

On appeal French argues that he presented genuine issues of fact to the district court that were improperly resolved by the judge on summary judgment. He urges us to regard Panozzo's racial slur as one sliver of evidence that, taken together with the remainder of the events, would entitle a jury to conclude that his termination was on account of his race. He also argues that the district court erred by requiring him to show a causal link between Panozzo's alleged racial slur and his termination. We review the grant of summary judgment *de novo*, construing the facts supported by

relevant evidence in the light most favorable to the non-moving party. See *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005).

The district court correctly concluded that the evidence French submitted in response to Alpha's summary judgment motion was not enough to create a genuine issue of fact under the direct method of proving discrimination. Under that method, the employee must offer either direct evidence or circumstantial evidence pointing directly to a discriminatory purpose on the part of the employer. *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005). French maintains that Panozzo's use of a racial slur several weeks after he gave the December 10 letter to Alpha was sufficient circumstantial evidence for a jury to find intentional discrimination, yet French denies that he must show a causal link between the remark and his termination. He is wrong. For a racial slur to be probative of racial discrimination, it must be causally related to the decision to terminate employment. See *Williams v. Seniff*, 342 F.3d 774, 790 (7th Cir. 2003); *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). Here, even if the evidence is interpreted in the light most favorable to French and Panozzo is presumed to have used a racial slur in the January 2002 meeting, French cannot show that the statement was causally related to the conclusion of his employment with Alpha. The January 2002 meeting occurred after Alpha denied French a leave of absence, accepted his resignation, and filled his position. Additionally, French agreed that the meeting with Panozzo had nothing to do with Alpha's denial of his request for a leave of absence or his resignation. Thus there is no causal link between the alleged remark and French's termination.

French has not challenged the district court's determination that he forfeited his discrimination claim under the indirect method. Moreover, he does not challenge any of the district court's reasons for finding that his claims could not succeed under the indirect method. He also fails to challenge the district court's determination that his resignation served as a legitimate reason for his termination. He does argue that the December 10 letter was not "really" a letter of resignation at all, but he offers nothing to refute the fact that Alpha reasonably understood it as such, which is all that is necessary to show that race had nothing to do with Alpha's action. In the end, French believes that the use of the summary judgment procedure effectively denied him his day in court. He quotes Winston Churchill and Alexander Hamilton to highlight the philosophical justification for the institution of the jury. But it is established beyond any argument that a jury trial is neither necessary nor appropriate when no genuine issues of fact are presented. French received all the process he is due, and we therefore AFFIRM the judgment of the district court.